# EXHIBIT A

| Sevier County<br>Circuit Court | **STATE OF TENNESSEE**<br>**CIVIL SUMMONS** | Case Number<br>19-CV-190-III |
|---|---|---|

**SEVIER COUNTY SCHOOLS FEDERAL CREDIT UNION, SUSANNE MUNSON, GEOFFREY WOLPERT, CHARLES MCGAHA, CHARLENE MCGAHA, ROBIN NICHOLS, GREGORY NICHOLS, REX NICHOLS, and SARAH MORRISON, on behalf of Plaintiffs and the class defined herein v. BRANCH BANKING & TRUST COMPANY**

CIRCUIT COURT
FILED
2019 MAR 22 PM
RITA D. ELLISON
SEVIER COUNTY

Served On:

**Branch Banking & Trust Company**
**C/O CT Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned to defend a civil action filed against you in CIRCUIT Court, SEVIER County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: 3/22/19 **COPY** Andrea Clark D.C.
Clerk / Deputy Clerk

Attorney for Plaintiff: Gregory Brown and Christopher C. Field, Lowe Yeager & Brown PLLC
900 S. Gay St., Suite 2102, Knoxville, TN 37902

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to Rita Ellison, Circuit Court Clerk, Sevier County Circuit Court
125 Court Ave Room 204E Sevierville, TN 37862

## CERTIFICATION (IF APPLICABLE)

I, ______________________, ________________ Clerk of ________________ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: ______________________ ______________________
Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: ______________________

______________________

Date: ______________________ By: ______________________
Officer, Title

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on ________________, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant ________________. On ________________ I received the return receipt, which had been signed by ________________ on ________________. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: ______________________

______________________
Notary Public / Deputy Clerk (Comm. Expires ________________ )

______________________
Signature of Plaintiff

______________________
Plaintiff's Attorney (or Person Authorized to Serve Process)

(Attach return receipt on back)

IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

CIRCUIT COURT FILED
2019 MAR 22 PM 1:24
RITA D. ELLISON, CLERK
SEVIER COUNTY, TN

SEVIER COUNTY SCHOOLS FEDERAL CREDIT UNION, SUSANNE MUNSON, GEOFFREY WOLPERT, CHARLES MCGAHA, CHARLENE MCGAHA, ROBIN NICHOLS, GREGORY NICHOLS, REX NICHOLS, and SARAH MORRISON, on behalf of Plaintiffs and the class defined herein,

Plaintiffs,

v.

BRANCH BANKING & TRUST COMPANY,

Defendant.

Case No. 19-CV-190 III

**COMPLAINT and**
**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This is a class action to recover damages on behalf of Plaintiffs and the members of the class they seek to represent.

2. Plaintiffs and the putative class members were induced to invest money in Money Market Investment Accounts ("MMIA") at First National Bank of Gatlinburg by a promise that the interest rate they received would never fall below 6.5%.

3. That promise was kept by First National Bank of Gatlinburg and by its successor, Bank First. BB&T also kept that promise for approximately seventeen years after it purchased Bank First.

4. Now, more than twenty-five years after those promises were made, BB&T has chosen to break the promise made to the Defendants and the putative class members.

5. As set forth below, BB&T's breach of contract has damaged the Plaintiffs and putative class members, and must be remedied.

**PARTIES**

6. Plaintiff Sevier County Schools Federal Credit Union is a member-owned non-profit cooperative organized in Sevier County, Tennessee, and it has filed this action on behalf of itself and all other persons similarly situated.

7. Plaintiff Susanne Munson is a resident of Sevier County, Tennessee, and she has filed this action on behalf of herself and all other persons similarly situated.

8. Plaintiff Geoffrey Wolpert is a resident of Sevier County, Tennessee, and he has filed this action on behalf of himself and all other persons similarly situated.

9. Plaintiff Charles McGaha is a resident of Sevier County, Tennessee, and he has filed this action on behalf of himself and all other persons similarly situated.

10. Plaintiff Charlene McGaha is a resident of Sevier County, Tennessee, and she has filed this action on behalf of herself and all other persons similarly situated.

11. Plaintiff Robin Nichols is a resident of Sevier County, Tennessee, and she has filed this action on behalf of herself and all other persons similarly situated.

12. Plaintiff Gregory Nichols is a resident of Sevier County, Tennessee, and he has filed this action on behalf of himself and all other persons similarly situated.

13. Plaintiff Rex Nichols is a resident of Sevier County, Tennessee, and he has filed this action on behalf of himself and all other persons similarly situated.

14. Plaintiff Sarah Morrison is a resident of Sevier County, Tennessee, and she has filed this action on behalf of herself and all other persons similarly situated.

15. Defendant BB&T is a banking institution with branches located in Sevier County.

**JURISDICTION AND VENUE**

16. Jurisdiction of this Court arises under Tenn. Code Ann. § 16-10-101.

17. Venue is appropriate in this Court pursuant to Tenn. Code Ann. § 20-4-101, as the actions giving rise to this cause occurred in Sevier County, Tennessee.

**CLASS ACTION ALLEGATIONS**

18. This action is brought by Plaintiffs on behalf of themselves and all other persons similarly situated. As set forth more fully below, this action is a proper case in which to maintain a class action.

19. The class is defined as all those who opened Money Market Investment Accounts ("MMIA") with First National Bank of Gatlinburg ("First National Bank") with a guaranteed interest rate of 6.5% from 1989 through February 1992, and who (1) maintained their account with BB&T, and (2) did not transfer their account to any third party through February 1, 2018.

20. The class of Plaintiffs in this matter is so numerous that joinder of all members is impracticable.

21. As set forth more fully below, there are numerous questions of law or fact common to the entire class including but not limited to the following:

a. Whether BB&T's conduct in significantly lowering the interest rate on the MMIAs below the guaranteed floor was a breach of contract entitling the account holders to damages;



Case 3:19-cv-00138-TRM-HBG Document 1-1 Filed 04/19/19 Page 5 of 32 PageID #: 10

b. Whether BB&T should be prevented from lowering the interest rate on the MMIAs;

c. Whether class members are entitled to injunctive relief to maintain the interest rate originally agreed upon for the money market accounts at issue; and

d. Whether class members are entitled to recover the value of all interest lost from the significantly decreased rate of the MMIAs at issue, as well as the net present value of any future interest lost on their respective accounts.

22. The claims of the named plaintiffs and the putative class members are all tangible, have common origin, and have a common basis. Plaintiffs all have the same type of money market investment account that was opened through First National Bank and maintained through approximately seventeen years after BB&T's purchase of First Bank; Plaintiffs were all guaranteed the same interest rate on their MMIAs; and the claims all originate from the same course of wrongful conduct by BB&T. If litigated individually, the claims of each class member would necessarily rely upon the same material facts, rely upon the same theories, and seek the same equitable and legal relief. As a result, the claims or defenses of the representative parties are typical of the claims or defenses of the class.

23. Each of the named representative parties is willing and able to serve as the named class representative and undertake all of the resulting duties and obligations; will fairly and adequately protect the class members; has no interest adverse to other class members; and has retained counsel, set forth below, who have substantial experience and success dealing with complex litigation and who are able to represent the interest of the entire class.

24. The questions of law and fact common to all class members predominate over any questions affecting only individual members.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy in light of the following facts:

a. Given the extensive common questions of law and fact, there are enormous economic benefits to both the courts and the litigants by adjudicating common issues on a class-wide, rather than of an individual, basis;

b. The expense and burden of individual litigation make it difficult for individual class members to redress the wrongs done to them, such that few individual class members could control the litigation of separate actions;

c. A class action is required for optimal deterrence and to limit the court-awarded reasonable expenses incurred by class members in pursuing their claims; and

d. There are no management difficulties posed by this action.

**FACTS**

26. Beginning in 1989, Plaintiffs opened MMIAs with First National Bank of Gatlinburg. **(Exhibit A,** MMIA Agreement).

27. Brochures and other advertisements promised that the MMIAs had a guaranteed rate of return that would never fall below 6.5%, subject to each MMIA holder complying with certain limited requirements. Specifically, the advertisement stated, "Our Money Market Investment Account rate is indexed to the 91-day U.S. Treasury Bill, so you are guaranteed a competitive market rate of interest. What's more, ***we will guarantee your interest rate will never go below 6.5%.***" **(Exhibit B,** MMIA Advertisement) (emphasis added).

28. The promises made regarding the MMIA interest rates were public and made in a well-developed, efficient market.

29. On or about January 22, 1992, First National Bank circulated letters to account holders notifying them that it intended to modify the terms of the MMIAs and lower the rate. (**Exhibit C**, Jan. 22, 1992 Letter).

30. In response to outrage from account holders, First National Bank circulated another letter dated February 21, 1992, offering alternatives to lowered interest rates on the MMIAs. (**Exhibit D**, Feb. 21, 1992 First National Bank Letter).

31. The alternatives presented in this letter were

(1) to roll the funds into a new money market investment account with a variable rate of interest;

(2) to obtain a Certificate of Deposit for 3 months to 5 years at a 6.5% rate; or

(3) to transfer funds into what was termed a "Maintenance Account" at a fixed rate of 6.5% (6.30%, compounded daily) with "all the features of your former account," but with the limitation that no additional deposits would be allowed into said Maintenance Accounts.

32. Plaintiffs all chose the third option of the Maintenance Account after being reassured that the account would forever maintain the guaranteed 6.5% rate.

33. On March 22, 1997, First National Bank merged into and was subsequently operated as part of Bank First.

34. Bank First at all times kept its promises to holders of the MMIAs that it had acquired from First National Bank.

35. On July 13, 2001, Bank First merged into and was subsequently operated as part of BB&T.

36. At the time of its purchase of Bank First, BB&T was aware of the MMIAs and its obligation to pay the guaranteed minimum interest rate to the MMIA account holders.

37. On July 16, 2001, the MMIAs were converted to BB&T Money Rate Savings accounts, wherein BB&T continued the existing accounts at an interest rate of 6.5%.

38. In early December 2001, due to a system issue, the interest rate on several accounts was inadvertently lowered to an interest rate of 3.32%.

39. When BB&T discovered the error, it quickly recognized its breach of its promises and took the necessary steps to correct it by resetting the interest rate to 6.32% (6.5% APR) and adjusting the accounts to reflect the lost interest.

40. On January 17, 2002, BB&T sent Plaintiffs a letter from the BB&T Regional President indicating the error and stated that BB&T was "committed to continuing [the] account's then-existing interest rate," and apologized, stating that BB&T hoped Plaintiffs were satisfied with the steps they took to ensure Plaintiffs were fairly compensated. (**Exhibit E**, Jan. 17, 2002 BB&T Letter).

41. From 1992 to 2018, the rates on these accounts have been honored by all three banking institutions.

42. Each plaintiff met his or her obligations set by the bank by refraining from depositing additional funds in the accounts and by not transferring ownership of the accounts.

43. On or about January 30, 2018, Plaintiffs were informed by an unsigned notice that the rates of these accounts were to drop from 6.32% APR to 1.05% on March 10, 2018 and would "automatically adjust to BB&T's standard balance tiers, as well as to the current standard variable rate of the interest and APY" after March 31, 2019. (**Exhibit F**, Jan. 30, 2018 BB&T Notice).

44. For balances over $999, the letters stated, BB&T's "standard balance tiers" paid interest at the rate of 0.01%. (Exhibit F, Jan. 30, 2018 BB&T Notice).

45. Upon information and belief, the Plaintiff class is less than one hundred individuals.

**COUNT I: BREACH OF CONTRACT**

46. Plaintiffs incorporate by reference the preceding paragraphs as if fully alleged herein.

47. Between 1989 and 1992, Plaintiffs entered into an agreement in writing to open a MMIA with First National Bank. As part of that agreement, and as a representation made to induce deposits, First National Bank guaranteed that the MMIAs' interest rate would not drop below 6.5%.

48. In 1992, Plaintiffs agreed to maintain their MMIAs as Maintenance Accounts. Plaintiffs agreed that they would not deposit any more funds into said Maintenance Accounts.

49. First National Bank reiterated its promise that the interest rate would remain at or above 6.5%.

50. Plaintiffs have fully complied with all of their obligations pursuant to the agreements made regarding their MMIAs.

51. Defendant assumed the obligations of the agreement when it merged with and began operating Bank First (formerly First Bank of Gatlinburg) as BB&T.

52. Defendant materially breached its agreement by significantly adjusting the interest from 6.32% to 1.05% on March 10, 2018, and by notifying Plaintiffs that the interest rate will "automatically adjust to BB&T's standard balance tiers, as well as to the current standard variable rate of the interest and APY," or 0.01%, after March 31, 2019.

53. Based upon this breach, Plaintiffs have been damaged in amounts equal to the value of all interest lost on their respective accounts, as well as the net present value of any future interest lost on their respective accounts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class they seek to represent, request the following relief:

1. An order certifying this action a class action under Rule 23 of the Tennessee Rules of Civil Procedure and appointing Plaintiffs as named representatives of the class described above;
2. Judgment in favor of Plaintiffs and the class they represent and against Defendant for compensatory damages in an amount to be determined as a result of Defendant's wrongful conduct;
3. Injunctive relief to protect the rights of Plaintiffs; and
4. Any such other further relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs demand trial by a jury of twelve persons as to all issues.

Gregory Brown [BPR # 027944]
Christopher Field [BPR # 028070]
LOWE YEAGER & BROWN PLLC
Riverview Tower, Suite 2102
900 South Gay Street
Knoxville, TN 37902
(865) 521-6527

Donald K. Vowell [BPR # 006190]
VOWELL LAW FIRM
6718 Albunda Drive
Knoxville, TN 37919
(865) 292-0000

*Attorneys for Plaintiffs*

## COST BOND

I acknowledge myself as surety for all court costs and taxes in this cause in accordance with Tenn. Code Ann. §20-12-120.

LOWE YEAGER & BROWN PLLC

By: ______________________
Gregory Brown

4811-2821-8500, v. 7

NAME OF ACCOUNT [redacted]

ADDRESS [redacted]

PIGEON FORGE TN [redacted]

ACCOUNT NUMBER [redacted]

Number of Signatures Required for Withdrawal: 1

OTHER SERVICES:

- ☐ AUTOMATED TELLER MACHINE
- ☐ AUTOMATIC PAYMENT
- ☐ AUTOMATIC TRANSFER
- ☐ DIRECT DEPOSIT
- ☐ OTHER

CERTIFICATION NOTICE: TIN:

Under penalties of perjury, I certify, by signing below (1) that the number shown above is my correct taxpayer identification number and (2) if this account is opened after 12/31/83, that I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding for a failure to report all interest or dividends or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. (If (2) does not apply, please line through it.) In addition, I acknowledge receipt of a copy of this form.

By signing below, I agree to the terms and conditions stated on this form.

2.X

3.X

# TO: FIRST NATIONAL BANK, Gatlinburg, TN 37738

Date Opened: 03/31/92 — Opened By: [redacted] — Initial Deposit: $ 133,320.32

OCCUPATION(S)

TELEPHONE NO.'S (000) 000-0000 [redacted]

PREVIOUS BANKING CONNECTION

BUSINESS

COUNTY AND STATE OF ORGANIZATION

AUTHORIZATION DATED

Trust or Pay On Death Beneficiary Designation

Name

Address

Name

Address

TYPE OF ACCOUNT — BUSINESS:

- ☐ SOLE PROPRIETORSHIP
- ☐ PARTNERSHIP
- ☐ CORPORATION - FOR PROFIT
- ☐ CORPORATION - NON PROFIT
- ☐ ORGANIZATION
- ☐ NOW ACCOUNT
- ☐ MONEY MARKET DEPOSIT ACCOUNT
- ☐ SUPER NOW ACCOUNT (NON PROFIT CORPORATION)
- ☐

TYPE OF ACCOUNT — PERSONAL:

- ☐ INDIVIDUAL
- ☐ SAVINGS
- ☐ JOINT - WITH SURVIVORSHIP
- ☐ JOINT - NO SURVIVORSHIP
- ☐ NOW ACCOUNT
- ☐ SUPER NOW ACCOUNT
- ☐ CERTIFICATE
- ☐ TRUST
- ☐ CHRISTMAS CLUB
- ☐
- ☐ MONEY MARKET DEPOSIT ACCOUNT
- ☐ PAY-ON-DEATH (BENEFICIARIES NAMED HEREIN)

(Name and address of persons who will always know your whereabouts)

Changes in the terms of this agreement may be made by the financial institution from time to time and shall become effective upon the earlier of (a) the expiration of a thirty day period of posting of such changes at the financial institution, or (b) the mailing or delivery of notice thereof to the depositor by the notice in the depositor's monthly statement for one month.

A copy of the account charges, if not contained on this form, is either displayed at the financial institution's lobby, entry or savings department or furnished to each account in a printed pamphlet, form, letter, card, statement, account folder or passbook.

☐ NOW / ☐ SUPER NOW / ☐ MONEY MARKET DEPOSIT ACCOUNTS

Minimum Initial Deposit $ 2,500.00 — Minimum Additional Deposit $

Minimum Balance Requirement $ 2,500.00 — Minimum Denomination for Drafts, Transfers and Withdrawals $

Penalty for failure to maintain required min. bal. $ 15 NOW interest

Interest Computation Period ☐ daily ☐ weekly ☐ [illegible]

Interest Rate or Method of Calculation 6.30 adjusted weekly

Method of Calculation for Determining Future Rates: [illegible] determined by bank

Number of Transactions

☐ Limited (Money Market Deposit) ☐ Unlimited (Super Now) If limited, specify 6 per

including 3 by check 6 by telephone transfer

6 by preauthorized/automatic transfer

Limitation of 3 checks determined by ☐ date written on check ☐ date paid XX

ITEMIZATIONS: Deposit Accounts

| Charge | Amount |
|---|---|
| ACCOUNT MAINTENANCE FEE | $ |
| WITHDRAWAL FEE PER ITEM | $ |
| INSUFFICIENT FUNDS CHARGE | $ 18.00 |
| OVERDRAFT CHARGE | $ 18.00 |
| STOP PAYMENT REQUEST CHARGE | $ 20.00 |
| STOP PAYMENT RENEWAL CHARGE | $ |
| PER CHECK CHARGE | $ |
| RECORDS SEARCH FEE | $ |
| INACTIVE ACCT. FEE | $ |
| WIRE TRANSFER FEE | $ |
| CHECK CERTIFICATION FEE | $ |
| TO CLOSE ACCT. CHARGE | $ |
| COST OF CHECKS | $ |

Non-Deposit Related Charges

| Charge | Amount |
|---|---|
| CASHING CHECK CHARGE | $ |
| SAFE DEPOSIT BOX RENT CHARGE | $ |
| SAFE DEP. BOX SAFE KEEPING FEE | $ |
| U.S. BOND REDEMPTION FEE | $ |
| BANK DRAFT, MONEY ORDER, CASHIER & TRAVELERS CHECKS FEE | $ |

EXHIBIT A

*I, ME, MY, MINE, The Account Holder (Singular and Plural)*
*YOU and YOUR, This Financial Institution*

Except as otherwise provided, items you receive for deposit and collection are subject to the Uniform Commercial Code in effect in this state. You may send any items for collection to any Federal Reserve Bank or any of its branches, and these items will be subject to the rules and regulations now or hereafter in effect, of the Federal Reserve Bank or the Board of Governors of the Federal Reserve System. Items drawn on, or payable at, or collected through any local financial institution may be presented directly through any local clearing house, and will be subject to the rules and regulations now or hereafter in effect, of such clearing house. You will not be liable for default or negligence of your properly selected correspondents, for loss in transit, for losses resulting from using indirect routes for collection, or for any other thing which you do in good faith in respect to handling any items and each selected correspondent will not be liable except for its own negligence. You, or your correspondent, may send items, directly or indirectly, to any financial institution, and accept its draft, check or credit as conditional payment in lieu of cash. You will not be responsible for items sent by mail for deposit and collection until you have received actual custody.

My statement will be ready for delivery on a date you select, or we mutually agree on, provided the account has been active in the month preceding that date. It will be my duty to call within a reasonable length of time if I do not receive my statement. You, at your discretion, may at any time mail my statement to me at my address as it appears on the other side of this card and I agree to assume all responsibilities for the miscarriage of mailed statements, and I [illegible] to accept as correct your records of the account. It will be my duty to carefully examine the statement and report to you, within sixty days after receiving my statement, any errors, forgeries, alterations, missing items, or discrepancies, and if no report is made within the sixty days, I agree to accept the stated balance as correct and will assume responsibility for, and hold you harmless for, the payment of any item reported in the account, and to release you from any liability. I agree to immediately return any check which does not belong to me.

You, in no case, will be responsible for or be subject to any liabilities in excess of those imposed by law for your own lack of good faith or your failure to exercise ordinary care. The obligation to exercise ordinary care in the handling of items including stop payment requests, will be measured by the standard of reasonableness of the procedures established for the transaction involved, and mere clerical error, inadvertence, or oversight without malice or an honest mistake of judgment, shall not be or constitute as to any transaction a failure to perform such obligations or a failure to exercise ordinary care and in no case will be deemed wrongful.

I may not stop payment of any cashier's or certified check. If I request you to stop payment on any item, I agree to furnish you with the exact amount, date, number, name of payee, and other information pertaining to the item as you may request, and failure to furnish this information will relieve you of any liability for any payment made contrary to the request. I agree to reimburse you for all expenses and losses resulting from refusing payment pursuant to the order, or if by reason of such payment other checks drawn by me are returned unpaid because of insufficient funds. You shall be under no duty to comply with any stop payment, or any renewal or revocation, unless the same be given to you during regular business hours and in such manner as to afford you a reasonable opportunity to act before the item is paid. Requests for stop payment, and renewals or revocations of such request (whether oral or written) will also be subject to the terms and conditions set forth in the request form then in use by you. When the time limitation of the stop payment request has expired you may pay the check without inquiry or notice to me. However, any check which is presented later than six months from the issue date may be refused by you as stale dated.

You may, at your discretion, refuse to certify a check.

You may charge a reasonable fee for collecting deposited items, for account maintenance (whether the account is active or dormant), for account activity, for overdrafts, for returned checks drawn against insufficient funds, for stop payment requests or renewals and for any unusual services rendered by you in respect to my account. All fees may be deducted from my account, and you shall not be liable for dishonoring checks because of insufficient funds resulting from the deduction of such fees.

The account may be closed by you at any time by mailing a notice to me with a check for the balance, and you shall not be liable for refusing to pay any checks presented after the account is closed.

You may refuse payment of any check drawn on the account other than a check which has been purchased from you or has been approved by you. You may refuse to honor any check signed in form which does not agree with name of account and the signature(s) on this card.

PROVIDED BELOW ARE THE RULES APPLICABLE TO EACH ACCOUNT TYPE. (SEE TYPE OF OWNERSHIP ON REVERSE SIDE).

INDIVIDUAL — AN ACCOUNT OPENED BY ONE PERSON WHO DOES NOT INTEND TO MAKE SURVIVORSHIP RIGHTS TO ANY OTHER PERSON.

JOINT/NO SURVIVORSHIP — WHEN AN ACCOUNT IS OPENED BY TWO OR MORE PERSONS, BUT NONE INTEND TO MAKE SURVIVORSHIP RIGHTS TO ANY OTHER PERSON(S).

JOINT/WITH SURVIVORSHIP — AN ACCOUNT OPENED BY TWO OR MORE PERSONS WITH A RIGHT OF SURVIVORSHIP AGREEMENT. THAT IN THE EVENT OF THE DEATH OF ONE TENANT, THE BALANCE IN THE ACCOUNT PASSES DIRECTLY TO THE SURVIVING TENANTS, INSTEAD OF THE ESTATE OF THE DECEASED TENANT.

TRUST AND PAY ON DEATH — THE PERSON MAKING EITHER OF THESE ACCOUNTS MAY WITHDRAW ANY PART OR ALL OF THE ACCOUNT BALANCE AT ANY TIME DURING HIS OR HER LIFETIME. UPON THE DEATH OF THE MAKER OF THE ACCOUNT, THE NAMED BENEFICIARY ACQUIRES THE RIGHT TO WITHDRAW FROM THE ACCOUNT. IF MORE THAN ONE BENEFICIARY SURVIVES THEN THE ACCOUNT WILL BE OWNED JOINTLY, WITHOUT THE RIGHT OF SURVIVORSHIP.

CORPORATE/PARTNERSHIP/ORGANIZATIONAL — THE CUSTOMER SHALL PROVIDE A SEPARATE AUTHORIZATION BY THE GOVERNING BODY, ADVISING WHAT PERSON(S) HAS THE AUTHORITY TO ACT IN THEIR BEHALF IN MAINTAINING THIS ACCOUNT. ANY CHANGE IN AUTHORITY MUST BE PROVIDED IN A WRITTEN DOCUMENT FROM THE GOVERNING BODY.

**SAVINGS ACCOUNTS:** I agree to the rules and regulations governing savings deposit accounts as they now exist and/or as they may be amended from time to time. A copy of the rules and regulations is either displayed in your lobby, entry or savings department or furnished to me in a printed pamphlet, form, letter, card, statement, account folder or passbook.

Any deposit made by check or other type instrument will be accepted subject to the provisions of the Uniform Commercial Code of this state and of any clearing house associated with which you associate. The validity of the deposit made by this means, therefore, would be subject to the clearance of any check which was made to make such deposit.

Complete and current deposit and withdrawal power authorization forms must be provided to you on all corporate, partnership, lodge or association type accounts when requested by you.

Accounts may be closed by you at any time by mailing a notice to me with a check for the balance of the account.

You may impose and collect monthly service charges and maintenance charges on dormant accounts, whether time or demand, in such reasonable amounts as may be determined by Resolution of your Board of Directors within the guidelines of applicable statutes.

**INTEREST BEARING ACCOUNTS:** I agree to the rules and regulations governing all interest bearing accounts as they now exist and/or as they may be amended from time to time. A copy of the rules and regulations is either displayed in your lobby, entry or Checking/Savings Department or furnished to me in a printed pamphlet, form, letter, card, statement, account folder or passbook.

Complete and current deposit and withdrawal power authorization forms must be provided to you on all corporate, partnership, lodge or association type accounts when you request.

You may impose and collect monthly service charges and maintenance charges on dormant accounts, in such reasonable amounts as may be determined by Resolution of your Board of Directors within the guidelines of applicable statutes.

**AGREEMENT CONCERNING YOUR RIGHT OF SET-OFF**

I acknowledge that you have the right to charge or set off any deposit I have with you, the debts or obligations owed by me to you whether direct or indirect, secured or unsecured, absolute or contingent, joint or several, due or to become due, whether as maker, endorser, guarantor or otherwise, now existing or hereafter contracted or acquired by you, and wherever payable, and the interest and expense, if any, which may be incurred by you in connection with and this agreement shall be construed to be my consent to make such a charge or set-off against my account(s) if consent be required by any present or future statute or law.

If any provision of this agreement is declared invalid, unenforceable or illegal, that part will not affect the validity, enforceability or legality of any other provision contained here.

© NATIONAL BANK PRODUCTS, INC. — SC2019 / MP35FA / MP35TDA 7/88

Terms of Money Market Account · ~~1st National~~ Maintenance . Bank First

FIRST NATIONAL BANK

Post Office Box 110
Gatlinburg, Tn 37738
Phone 615-436-5011
Fax 615-430-3390

# What is the Difference Between Most Money Market Accounts and the New First National Bank Money Market Investment Account?

For starters, you will earn a premium interest rate of 9.00% with an effective annualized yield of 9.43% on deposits of $2,500 or more.

And these rates are more than a "come on"...your earnings are guaranteed three ways:

**1) 9.00% is guaranteed through July 31, 1989!**

**2) Starting August 1, 1989, the Money Market Investment Account rate at First National Bank will be set each week to match the 91-day U.S. Treasury Bill!**

**3) We guarantee the rate will never fall below 6.50%!**

People in Sevier County have told us they want an investment with higher yields and lower minimums, that is easy to access and FDIC insured. ***And when people talk, First National Bank listens.***

EXHIBIT

B

This exciting investment account offers a high rate of interest that competes with brokers' cash management accounts, mutual funds, and certificates of deposit. But the Money Market Investment Account is superior to many of those investments because of these special benefits:

☆ FDIC insurance protection

☆ Low minimum balance of $2,500

☆ Convenient access to your funds via
-in-person withdrawal
-Bank-in-a-Box ATM card
-personal check~
-wire or electronic transfer~

☆ No annual fees or service charges on balances $2,500 or above

☆ Freedom to deposit or withdraw funds from your account at anytime in any amount

☆ Available to individuals, partnerships, businesses, trusts, pension plans, and corporations.

First National Bank is committed to staying in touch with the needs of our community and determined to provide the most attractive investment alternatives available.

Compare our Money Market Investment Account with other investments...you will find that this account offers more security, more flexibility, and more earnings than any other single program available.

~ Some Limitations Apply ~

# Compare Other Investments With The First National Bank Money Market Investment Account

| Features | [illegible] | BANK CD | MERRILL-LYNCH† CMA | U.S. TREASURY BILL | SMITH-BARNEY EQUITY† MUTUAL FUND |
|---|---|---|---|---|---|
| Minimum Investment | [illegible] | Varies, often as high as $10,000 | $20,000 cash and securities | $10,000 | $3,000 |
| Interest Rate | [illegible] | Set by the financial institution; dependent on amount and maturity | Based on fund selection and securities performance | Based on U.S. Government debt and other market conditions; set at weekly auction | Based on securities performance [1988 Yield = 3%] |
| Principal at Risk | [illegible] | No (Early withdrawal penalty may reduce principal) | Yes (Funds invested in stocks and bonds are subject to value fluctuations) | No (If sold prior to maturity principal amount is not guaranteed) | Yes (Funds invested in stocks and bonds are subject to value fluctuations) |
| FDIC Insured | [illegible] | YES | NO | NO | NO |
| Access | [illegible] | NONE Penalty for early withdrawal | By check or by credit card | NONE unless sold in secondary market | NONE Except by Liquidation |
| Fees | [illegible] | None | $80.00 annual fee plus commissions for any trading out of account | None when purchased directly from Federal Reserve; Broker charges as high as $90.00 | Sales Charge (Load) is 5.75% of amount invested Management Fee for 1988 totaled .85% of assests |
| Money Invested | [illegible] | Locally, in loans to businesses and individuals | One of four proprietary mutual funds | U.S. Government | Stocks of publicly held corporations; largest holding is in IBM |

†Information received directly from respective companies.

To open your high-interest Money Market Investment Account, simply complete and return the enclosed form along with your check today. As soon as we receive your deposit, we will immediately open your account and send you the First National Bank Money Market Investment Account Agreement by return mail. Or stop by any of our convenient customer service locations and receive personal service from one of our customer account specialists.

**But do it today and take advantage of the premium interest earnings for the next month!**

If you have any questions, we encourage you to call us at 436-5011. We look forward to hearing from you.

Keep in Touch,

Thomas M. McNerney
President and CEO

P.S. If you have additional funds and wish to diversify your investments, call about our CHOICE CD. For a limited time with a minimum amount of $10,000, you choose the term (7 to 12 months) and we pay 10% interest! This is a certificate of deposit; there is a substantial penalty for early withdrawal... Another innovative savings solution from First National Bank.

# A First Choice for Smart Investments

The Money Market Investment Account offers a high rate of interest that competes with brokers' cash management accounts, mutual funds, and certificates of deposit. But because of several unique features, this exciting account stands out among investment alternatives.

## Customer Service Centers

★Gatlinburg: 811 Parkway
Gatlinburg, TN 37738 / 436-5011

★Dudley Creek: Highway 321
Gatlinburg, TN 37738 / 436-7888

★Pigeon Forge: 115 S. River Road
Pigeon Forge, TN 37863 / 428-2265

★Sevierville: Forks of the River Pkwy.
Sevierville, TN 37862 / 428-1244

★Seymour: 10615 Chapman Highway
Seymour, TN 37865 / 573-3060




Recycled

MEMBER

# Money Market Investment Account

BECOME
BB+T BANK
GRANDFATHERED

# Outstanding Benefits

## Low Minimum
The minimum balance of only $2500 rivals competitive products that require much larger initial investments. And if your balance falls below $2500, you will still receive the prevailing NOW account rate of interest as long as your balance remains above $800.

## Guaranteed Rate
Our Money Market Investment Account rate is indexed to the 91-day U.S. Treasury Bill, so you are guaranteed a competitive market rate of interest. What's more, we guarantee your interest rate will never go below 6.5%.

## Daily Compounding
Interest will be compounded daily to provide the maximum yield on funds whether they are on deposit for one day or one year.

## FDIC Insured
Unlike brokerage accounts that offer similar yields, the Money Market Investment Account is fully insured by the federal government up to $100,000.

| FEATURES | FIRST MMIA | BANK CD | MERRILL-LYNCH† CMA | U.S. TREASURY† BILL | SMITH-BARNEY EQUITY† MUTUAL FUND |
|---|---|---|---|---|---|
| Minimum Investment | $2500 | Varies, often as high as $10,000 | $20,000 cash and securities | $10,000 | $3000 |
| Interest Rates | Guaranteed 3 ways: 1) Equal to 91-day T-Bill 2) Compounded Daily 3) Never below 6.5% | Set by the financial institution; dependent on amount and maturity | Based on fund selection and securities performance | Based on U.S. Government debt and other market conditions. Set at weekly auction | Based on securities performance |
| Principal at Risk | No | No (Early withdrawal penalty may reduce principal) | Yes (Funds invested in stocks and bonds are subject to value fluctuations) | No (If sold prior to maturity principal amount is not guaranteed) | Yes (Funds invested in stocks and bonds are subject to value fluctuations) |
| FDIC Insured | YES | YES | NO | NO | NO |
| Access | Unlimited via: *Personal withdrawal *Bank-in-a-Box ATM Limited transfers: *Check (3/month) *Telephone or mail *Pre-authorized | NONE Penalty for early withdrawal | By check or by credit card | NONE unless sold in secondary market | NONE Except by liquidation |
| [illegible] | Only when balance falls below $2500. [illegible] service charge [illegible] below $2500 | None | $3000 annual fee plus commissions for any trading out of account | None when purchased directly from Federal Reserve. Broker charges as high as $[illegible] | Sales Charge (Load) [illegible] Management Fee for 1988 totaled [illegible] of assets |
| Money Invested | Locally, in loans to businesses and individuals | Locally, in loans to businesses and individuals | One of four proprietary mutual funds | U.S. Government | Stocks of publicly held corporations; largest holding is in IBM |

†Information received directly from respective companies, April 1989.

## Unlimited Access
Add to or withdraw from your Money Market Investment Account at any time without penalty. At the bank, you can make deposits or withdrawals inside or at the drive-through. And with your free Bank-in-a-Box card, you even have 24-hour access to your funds.

## Check Wri
Once you ope Investment A receive specia any third part your account. three per mon Wire or telepl also available. total of six tra month withou

## No Annua
On balances a pay no fees o Money Mark Account. Mu charge front-e and transacti as broker con be charged o month in whi falls below $.

## The Account For Everyone
Whether you are a corporate invest saver, this unique Money Market In available to individuals, partnershi trusts, pension plans, and corporat key to profitable funds managemer



Post Office Box 110
Gatlinburg, TN 37738
Phone 615-436-5011
Fax 615-430-3390

January 22, 1992

Harvey Oakley
Melba Oakley
1133 Little Smoky Road
Gatlinburg TN 37738

Dear Mr. Oakley and Ms. Oakley,

In May of 1989, First National Bank announced enhancements to the terms and conditions of the Money Market Investment Account (MMIA). We have been gratified by your response to these innovative changes and hope that you have been pleased with the fact that your MMIA has out-performed competitive products by posting an average stated yield of 8.19% (annualized) during the eighteen months following the introduction of the new terms.

Even though the Treasury Bill index fell below 6.5% on January 15, 1991, we are proud to have maintained that rate on your account for the past year. Given current economic pressures, however, we are faced with the recognition that this rate can no longer be maintained.

Since the MMIA was enhanced, market rates have fallen faster and lower than at anytime in over 20 years. Additionally, the premiums that all banks pay to the Federal Deposit Insurance Corporation (FDIC) to insure your deposits have increased 176% since 1989; for First National, this translates into an expense of nearly $300,000 for 1992, alone.

Consequently, effective February 21, 1992, we will modify the terms and conditions of the First National MMIA. The MMIA rate will be set on a weekly basis to reflect market conditions. Interest will accrue daily and will be posted to your account each month.

We assure you that First National will continue to price all of our products with the most competitive rates in the area. Effective February 21, we will be paying 5.12% on your account for an annualized yield of 5.24%..still the best MMIA rate in Sevier County!

We appreciate your banking business and look forward to our continued relationship in 1992.

Respectfully,

Tom

Thomas M. McNerney
President and CEO

Member FDIC

EXHIBIT
C




Post Office Box 110
Gatlinburg, TN 37738
Phone 615-436-5011
Fax 615-430-3390

February 21, 1992

Important Notice to all Money Market Investment Account (MMIA) Customers:

**GOOD NEWS!**

Since my letter of January 22, 1992, many of you have called or come by to ask about alternative investment options for the funds in your MMIA. Many of you have offered innovative suggestions for creating options that preserve your earning power on those funds...As ever, **we are listening!**

Therefore, the changes proposed in my previous letter, which would have taken effect today, will not be implemented so that you may have plenty of time to consider investment alternatives.

While the former MMIA product will be discontinued effective March 31, 1992 and your account will be closed, we will be happy to transfer all or any portion of your funds to any other account or a combination of accounts. Some options are:

New Money Market Investment Account - This newer version of the product you currently own allows you to retain your deposit and withdrawal capabilities while earning a competitive rate of interest as set by the bank each week (currently 5.12%, compounded monthly for a yield of 5.24%).

Certificate of Deposit - You may invest in a certificate of deposit with your choice of maturity from 3 months to 5 years with a simple interest rate of 6.50%, compounded monthly for a yield of 6.70%.

Maintenance Account - You may choose to transfer funds from your existing MMIA to this newly created account that will yield 6.50% (6.30%, compounded daily). This account will have all the features of your former account except that **additional deposits will not be allowed.**

And if it is most convenient for you, the entire transaction can be handled by mail. We are enclosing a postage-paid envelope and a response form where you may indicate your choices. Upon receipt of your response, we will prepare any needed documentation (signature card, disclosures, etc.) and forward it to you for completion.

If we have not heard from you by March 31, we will prepare and mail documentation for the new MMIA (Option 1, above) and transfer the funds on deposit into that account where you will continue to earn interest.

EXHIBIT D



Member FDIC

I apologize for any confusion caused by my first letter. Of course, should you have any questions about this or any other account at First National, feel free to give any Customer Account Specialist a call.

We look forward to hearing from you!

Best regards,

Thomas M. McNerney
President and CEO

- - - - - - - - - - Please Detach Here - - - - - - - - - -

**RESPONSE FORM**

Please transfer the funds from my Money Market Investment Account number ______________ as follows:

$_____________ to a New Money Market Investment Account.

$_____________ to a Certificate of Deposit with a maturity of __________________.

$_____________ to a Maintenance Account.

$_____________ to my existing (Circle one: checking savings) account. My account number is _______________.

$_____________ to a new (Circle one: checking savings) account. Type of account: ____________________.

$_____________ in a cashier's check and mail to me.

Other instructions (please be specific): ____________________

____________________________________________________________

Account Name(s) ____________________________________________

Mailing Address ____________________________________________

City ________________________ State ______ Zip _____________

Social Security Number ___________________

Authorized Signature _______________________________________

If you need additional copies of this form, we will be happy to mail them to you. Just give us a call at 436-5011!



Branch Banking & Trust Co.

Charles T. McGaha
Charlene McGaha
3361 Old Newport Hwy.
Sevierville, TN 37876-1151

January 17, 2002

Re: Account number: 0110052367

Dear Charles T. McGaha and Charlene McGaha:

When your BankFirst account was converted to a BB&T Money Rate Savings account on July 16, 2001, BB&T committed to continuing your account's then-existing interest rate of 6.32% APR. In early December, due to a system issue, your interest rate was inadvertently lowered to an interest rate of 3.32% APR. We quickly discovered the error and took the necessary steps to correct it.

On December 14, 2001, your account's interest rate was restored to 6.32%. On December 18, an adjustment of $81.76 was made to your account, which reflects the additional interest due to you. This interest adjustment will be reflected on your December statement. Your 1099 form, on which we are required to report your interest earned to the IRS, will reflect the correct earnings figure for 2001.

We apologize for any inconvenience and hope that you are satisfied with the steps we have taken to ensure you are fairly compensated. Should you have any questions about this letter or about any of your accounts, please contact a representative at any East Tennessee BB&T office or call 1-800-BANK-BBT (1-800-226-5228).

We appreciate your business and look forward to serving your financial needs in the future.

Sincerely,

Lars C. Anderson
Regional President

©2002 BB&T Member FDIC. Equal Housing Lender





Branch Banking & Trust Co.

Charlene McGaha
3361 Old Newport Hwy.
Sevierville, TN 37876-1151

January 17, 2002

Re: Account number: 0110052359

Dear Charlene McGaha:

When your BankFirst account was converted to a BB&T Money Rate Savings account on July 16, 2001, BB&T committed to continuing your account's then-existing interest rate of 6.32% APR. In early December, due to a system issue, your interest rate was inadvertently lowered to an interest rate of 3.32% APR. We quickly discovered the error and took the necessary steps to correct it.

On December 14, 2001, your account's interest rate was restored to 6.32%. On December 18, an adjustment of $81.76 was made to your account, which reflects the additional interest due to you. This interest adjustment will be reflected on your December statement. Your 1099 form, on which we are required to report your interest earned to the IRS, will reflect the correct earnings figure for 2001.

We apologize for any inconvenience and hope that you are satisfied with the steps we have taken to ensure you are fairly compensated. Should you have any questions about this letter or about any of your accounts, please contact a representative at any East Tennessee BB&T office or call 1-800-BANK-BBT (1-800-226-5228).

We appreciate your business and look forward to serving your financial needs in the future.

Sincerely,

Lars C. Anderson
Regional President

©2002 BB&T Member FDIC. Equal Housing Lender



# Account Disclosure for Fixed-Rate Accounts

Date: 1/30/2018

## Product Summary

| Product | Account Type | Account Number |
|---|---|---|
| Personal Money Rate Savings | Savings | 110052332 |

| Mailing Address | Fixed Rate | Rate | APY* |
|---|---|---|---|
| Client Name: Jeffrey S Pullium | $1.00+ | 1.05% | 1.06% |
| Street: 1118 Johns Branch Road | **Standard Balance Tiers** | **Rate** | **APY*** |
| City: Gatlinburg | $0-$999 | 0.00% | 0.00% |
| State & Zip: TN 37738-5409 | $1,000 - $24,999 | 0.01% | 0.01% |
| | $25,000 - $49,999 | 0.01% | 0.01% |
| Current Balance: $18,595.61 | $50,000 - $99,999 | 0.01% | 0.01% |
| | $100,000 - $499,999 | 0.01% | 0.01% |
| | $500,000 - $99,999,999,999 | 0.01% | 0.01% |

*Annual Percentage Yield

The interest rate on your account is currently 6.32% with an Annual Percentage Yield (APY) of 6.32%. You will be paid this rate for 30 days until 03/10/2018. After which your new fixed rate will be 1.05% until 03/31/2019. After 03/31/2019, your account will automatically adjust to BB&T's standard balance tiers, as well as to the current standard variable rate of interest and APY. Please contact your local BB&T Branch for more information.

BB&T. Member FDIC. Only deposit products are FDIC Insured.





# Account Disclosure for Fixed-Rate Accounts

Date: 1/30/2018

## Product Summary

| Product | Account Type | Account Number |
|---|---|---|
| Personal Money Rate Savings | Savings | 110052278 |

| Mailing Address | Fixed Rate | Rate | APY* |
|---|---|---|---|
| Client Name: Susanne A Munson | $1.00+ | 1.05% | 1.06% |
| Street: 1645 Cardinal Dr | **Standard Balance Tiers** | **Rate** | **APY*** |
| City: Gatlinburg | $0-$999 | 0.00% | 0.00% |
| State & Zip: TN 37738-5840 | $1,000 - $24,999 | 0.01% | 0.01% |
| | $25,000 - $49,999 | 0.01% | 0.01% |
| Current Balance: $219,465.99 | $50,000 - $99,999 | 0.01% | 0.01% |
| | $100,000 - $499,999 | 0.01% | 0.01% |
| | $500,000 - $99,999,999,999 | 0.01% | 0.01% |

*Annual Percentage Yield

The interest rate on your account is currently 6.32% with an Annual Percentage Yield (APY) of 6.32%. You will be paid this rate for 30 days until 03/10/2018. After which your new fixed rate will be 1.05% until 03/31/2019. After 03/31/2019, your account will automatically adjust to BB&T's standard balance tiers, as well as to the current standard variable rate of interest and APY. Please contact your local BB&T Branch for more information.

BB&T. Member FDIC. Only deposit products are FDIC insured.

IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

| SEVIER COUNTY SCHOOLS FEDERAL CREDIT UNION, SUSANNE MUNSON, GEOFFREY WOLPERT, CHARLES MCGAHA, CHARLENE MCGAHA, ROBIN NICHOLS, GREGORY NICHOLS, REX NICHOLS, and SARAH MORRISON, on behalf of Plaintiffs and the class defined herein,<br><br>Plaintiffs,<br><br>v.<br><br>BRANCH BANKING & TRUST COMPANY,<br><br>Defendant. | Case No. 19-CV-190 III<br><br>JURY DEMAND |
|---|---|

## PLAINTIFFS' FIRST SET OF INTERROGATORIES & REQUESTS FOR PRODUCTION TO BRANCH BANKING & TRUST COMPANY

Plaintiffs, by and through counsel, request Defendant, Branch Banking & Trust Company, to respond to the following interrogatories and requests for production in the manner and time set forth in Tenn. R. Civ. P. 33 and 34. If any information, document or portion of Defendant's response is or will be withheld because of a claim of privilege or work product, such claim must be made in accordance with Tenn. R. Civ. P. 26.02(5). In answering the Requests for Production of Documents, furnish all information in your possession, custody, or control that is not subject to a claim of privilege, in accordance with Tenn. R. Civ. P. 34.01.

**DEFINITIONS**

1. "Account" or "Accounts" shall refer to the Money Market Investment Accounts opened through The First National Bank of Gatlinburg any time between 1989 and 1992, a brochure for which is attached to the Complaint as **Exhibit B**.

2. "Account Holders" shall mean any person or entity who holds or held a Money Market Investment Account that was opened through The First National Bank of Gatlinburg any time between 1989 and 1992, a brochure for which is attached to the Complaint as **Exhibit B**.

3. "BB&T," "you," and "your" shall refer to Defendant, Branch Banking and Trust Company.

4. "Correspondence" shall include, but is not limited to, any type of communication, email, facsimile, letter, text, or other electronic message, or audio or video recording of a conversation or telephone call.

5. "Documents" shall mean all include any original and all copies of any written, printed, typed, electronically stored, or graphic matter of any kind or nature, however produced or reproduced, now in your possession, custody or control, or in the possession, custody or control of your agents, representatives, employees of you or any and all persons acting in your behalf .

## INTERROGATORIES

1. Please identify all information for any and all Accounts that were maintained through January 30, 2018. For each Account identified, please provide the following information:

   a. the Account number;

   b. the balance of the Account as of December 31, 2017;

   c. the Account Holder's name;

   d. the Account Holder's most recent address;

   e. the Account Holder's most recent email address; and

   f. the Account Holder's most recent phone number.

**ANSWER:**

2. Please identify by name, address, and telephone number, each person having knowledge of discoverable matters in this action. For each person identified, please summarize the subject matter of their knowledge.

**ANSWER:**

3. Please identify by name, address, and telephone number each witness who you may call, or will call, in defense of Plaintiff's claims.

**ANSWER:**

4. Please identify each person who you expect to call as an expert witness at trial. For each expert identified, please state the following information:

   a. the subject matter on which the expert it expected to testify;

   b. the substance of the facts and opinions to which the expert is expected to testify;

c. a summary of the grounds for each opinion;

d. the expert's qualifications;

e. all publications authored by the expert in the previous ten years;

f. all other cases in which, during the previous four years, in which the witness testified as an expert; and

g. the compensation to be paid for the study and testimony in this case.

**ANSWER:**

5. Please provide a total balance of all Accounts as of December 31, 2017.

**ANSWER:**

6. Please identify each and every Account that remained open through December 31, 2017, but has since been closed. For each account, provide the following information:

a. identification of the Account Holder, including the most recent name, address, telephone number, and email address;

b. the date in which the Account was closed; and

c. the balance of the Account as of December 31, 2017.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1. Produce any documents establishing the information of the Account identified in your answer to Interrogatory number 1.

**RESPONSE:**

2. Produce any and all documents received by BB&T from BankFirst, prior to BB&T's purchase of BankFirst, concerning the Accounts, including but not limited to correspondence from BankFirst or any agents or employees of Bank First.

**RESPONSE:**

3. Produce any and all documents concerning the Accounts held by the named Plaintiffs.

**RESPONSE:**

4. Produce any and all correspondence, not including bank statements, sent to Account Holders concerning interest rates or any other terms of their Accounts at any time.

**RESPONSE:**

Dated March 22, 2019.

LOWE YEAGER & BROWN PLLC

Gregory Brown [BPR # 027944]
Christopher Field [BPR # 028070]
LOWE YEAGER & BROWN PLLC
Riverview Tower, Suite 2102
900 South Gay Street
Knoxville, TN 37902
(865) 521-6527

Donald K. Vowell [BPR # 006190]
VOWELL LAW FIRM
6718 Albunda Drive
Knoxville, TN 37919
(865) 292-0000

*Attorneys for Plaintiffs*