UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GEOFFREY WOLPERT, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:19-CV-138-TRM-DCP |
| BRANCH BANKING TRUST & COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Determine Claim of Privilege [Doc. 167]. Defendant responded in opposition to the motion [Doc. 171], and Plaintiffs replied [Doc. 173]. The parties also filed supplemental briefs [Docs. 165, 175]. The parties appeared before the undersigned on February 23, 2023, for a motion hearing.[1] Attorneys Donald Vowell and William Hickerson appeared on behalf of Plaintiffs. Attorneys Kristine Roberts and Robert Tom appeared on behalf of Defendant.[2] For the reasons explained below, the Court **GRANTS** Plaintiffs' motion [**Doc. 167**].

---

[1] The Court addressed several motions at the February 23 hearing, including Plaintiffs' Motion for Protective Order [Doc. 123], Defendant's Motion for Entry of Confidentiality and Protective Order [Doc. 127], Defendant's Motion for Protective Order [Doc. 130], Plaintiffs' Motion to Compel 'Redesignated' Discovery and for Fees and Expenses [Doc. 154], and Plaintiffs' Motion to Appoint Counsel [Doc. 159]. The Court has already ruled on these motions [Docs. 179, 180, 184, and 185].

[2] Attorney Robyn English-Mezzino was also present on behalf of Defendant, but she is not counsel of record in CM/ECF.

## I. BACKGROUND

This is a breach of contract case [Doc. 87]. According to the allegations in the Amended Complaint, Plaintiffs invested their money in Money Market Investment Accounts ("MMIAs") at First National Bank of Gatlinburg [*Id.* ¶ 2]. The bank guaranteed that the interest rate on the MMIAs would never fall below 6.5% [*Id.*]. The successor bank, BankFirst, kept that promise, and Defendant also kept that promise for approximately seventeen years after it purchased BankFirst [*Id.* ¶ 3]. Plaintiffs allege that Defendant later lowered the interest rate below the guaranteed 6.5%, and now Plaintiffs have filed suit [*Id.* ¶ 4].[3]

The instant dispute relates to Defendant's request to claw back documents based on the attorney-client privilege. On December 29, 2021, the Court compelled Defendant to supplement its discovery responses within thirty days [Doc. 171 p. 24]. Defendant states that it "reviewed approximately 9,445 pages of documents for responsiveness and privilege[,]" and it employed a four-step review process [*Id.*]. According to defense counsel, Nicholas W. Diegel ("Attorney Diegel"), Defendant employs this four-step review process when reviewing documents, and Attorney Diegel explains as follows:

> I conducted the initial review to determine responsiveness to written discovery requests and to determine whether documents were potentially subject to claims of privilege. Christopher E. Thorsen, another attorney with the firm, conducted a second-level [review] of the documents that I identified as privileged or potentially privileged. Following the second-level review by Mr. Thorsen, I then applied redactions to the privileged portions of those documents or identified them as documents to be withheld as wholly subject to privilege. Mr. Thorsen then reviewed my redactions and withholding designations to privileged documents. Finally, Mr. Thorsen and I generated a privilege log to list and provide

---

[3] After Defendant acquired the bank, it requested that its customers sign a signature card. Some customers signed the card, while others did not. The signature card contained an arbitration provision, and on September 15, 2022, the Chief District Judge ordered the named-Plaintiffs who signed the signature card to arbitration [Doc. 115].

>       identifying information for documents that were withheld or
>       redacted based on their privileged designations.

[*Id*. at 23–24].

On January 28, 2022, Defendant produced approximately 7,951 pages of additional documents [*Id*. at 24]. This production included a letter dated March 5, 2018 ("March 5 Letter"), from a former bank employee and a MMIA accountholder, Rhonda Parton ("Parton"), to Becky Beeler, who was at the time Defendant's employee [Doc. 171 pp. 13 and 25]. Later, on October 3, 2022, Plaintiffs sent Defendant a meet and confer letter alleging certain issues with Defendant's discovery responses [Doc. 167-2]. In the October 3 letter, Plaintiffs noted that Defendant redacted information relating to Parton, but Defendant did not mention it in the privilege log [*Id*. at 2–3]. Plaintiffs requested that Defendant supplement the privilege log. Defendant claims that in reviewing its production on October 25, 2022, it "discovered the inadvertent disclosure of certain portions of [the March 5 Letter] that implicated the attorney-client privilege [Doc. 171 at 25]. On November 2, 2022, Defendant served a claw back letter requesting "that all copies of [the March 5 Letter] be destroyed and that Plaintiffs certify their compliance" [*Id*.].[4] The instant motion followed.

Pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), Plaintiffs move to determine the applicability of Defendant's claim of privilege with respect to the March 5 Letter and request that the Court deem it to be waived. To support their argument that Defendant waived the attorney-client privilege, Plaintiffs point to other documents that Defendant produced during discovery,

---

[4] The March 5 Letter is Bates stamped as BBT-001342 and is currently filed under seal as [Doc. 138-1].

alleging that those documents involve the same subject matter as the March 5 Letter [*See* Doc. 135-4 pp. 2–5, and 42 SEALED (Bates Nos. 011219, 011220, 011249, 011250, and 012049)].[5]

Defendant claims that it properly asserted the attorney-client privilege as to the March 5 Letter and that it has clearly satisfied the standard set forth in Federal Rule of Evidence 502(b) to claw back the document. In further response to Plaintiffs' arguments concerning others produced documents involving the same subject matter, Defendant maintained that an email exchange among four bank employees reflecting only "the fact of legal consultation" and not disclosing any advice provided by Defendant's counsel was not privileged [Doc. 171 p. 12 (citing BBT-011249)]. Another document, according to Defendant, "similarly does not disclose the substance of any confidential communications with bank's counsel" [*Id*. (citing BBT-012049)]. Defendant states that the Court should deny Plaintiffs' motion, direct all unredacted copies of the March 5 Letter to be destroyed, and "expunge from any other document or material or information derived from the inadvertently-produced unredacted version" [*Id*. at 1].

On February 14, 2023, Defendant filed a supplemental brief, claiming that it has conducted a further analysis of documents cited in Plaintiff's Motion, and "it now agrees with Plaintiffs that portions of documents [they] highlighted are privileged" [Doc. 165 p. 2]. Thus, Defendant "asserts the attorney-client privilege with respect to the following documents cited in Plaintiffs' Motion and claws them back as having been produced without necessary redactions: BBT-011219–011220, BBT-011249–011250, and BBT–012049" [*Id*.]. Defendant describes these documents as "two email strings among [its] employees in January and April 2018" ("Email Strings") [*Id*.].

---

[5] Plaintiffs filed [Doc. 135-4] in the public record on December 27, 2022. Later, on February 14, 2023, for the reasons explained below, the Court placed these records under seal pending a determination of whether Defendant waived the attorney-client privilege as to these documents [Doc. 166].

4

Plaintiffs respond to Defendant's supplemental brief arguing that it has waived the privilege with respect to the Email Strings [Doc. 175].

## II. ANALYSIS

During the hearing in this matter, the parties clarified that at issue is approximately two paragraphs in the March 5 Letter [Doc. 138-1 SEALED (Bate No. BBT-011342)] and approximately two lines in the Email Strings [Doc. 135-4 pp. 2 and 42 (Bate Nos. BBT-011219 and BBT-012049)]. The parties dispute whether the attorney-client privilege is applicable to these documents, and if so, whether Defendant waived it.

For the reasons more fully explained below, the Court finds that the attorney-client privilege applies to the two paragraphs in the March 5 Letter and the approximately two lines in the Email Strings. The Court finds, however, that Defendant has waived the attorney-client privilege.

### A. Attorney-Client Privilege

Federal Rule of Evidence 501 provides that in diversity cases, the court applies state law to resolve attorney-client claims. *See also In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations omitted). "The rules governing the attorney-client privilege under Tennessee law incorporate both statutory and common law." *Robinson v. Mathis*, No. 220CV02435SHLATC, 2021 WL 6804133, at *2 (W.D. Tenn. Sept. 14, 2021) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). Specifically, Tennessee Code Annotated § 23-3-105 provides as follows:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

5

Tenn. Code Ann. § 23-3-105. "Although T.C.A. § 23-3-105 refers to communications made to an attorney by a client, communications made by a client to an attorney are privileged to the extent those communications are based upon a client's confidential communication or would reveal the nature of a confidential communication if disclosed." *Terrell v. Memphis Zoo, Inc.*, No. 17-CV-2928-JPM-TMP, 2018 WL 3245003, at *2 (W.D. Tenn. July 3, 2018) (citing *State v. Buford*, 216 S.W.3d 323, 326 (Tenn. 2007)). In order to assert the privilege, the holder must show

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Humphreys, Hutcheson & Moseley v. Donovan*, 568 F. Supp. 161, 175 (M.D. Tenn. 1983), *aff'd*, 755 F.2d 1211 (6th Cir. 1985).

"Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 149841, at *5 (E.D. Tenn. Jan. 15, 2021) (quoting *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *2 (M.D. Tenn. Dec. 1, 2015) (citation omitted)). Further, courts have explained that "communications with in-house counsel may be privileged." *EPAC Techs., Inc.*, 2015 WL 13729725, at *2 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)). "[C]ommunications conveying or seeking legal advice are privileged[.]" *Id*.

In their opening brief, Plaintiffs primarily argue that Defendant waived the attorney-client privilege [Doc. 169]. In their reply brief, however, Plaintiffs state, "The communications here in question are the advice and opinions of the attorney and, generally are thus not privileged in the first place" [Doc. 173 pp. 13–14]. Plaintiffs continue that "the Tennessee Supreme Court has held that 'under some circumstances communications made by the attorney to the client are also protected by the privilege'" [*Id.* at 14 (quoting *State v. Buford*, 216 S.W.3d 323, 326 (Tenn. 2007)]. But Plaintiffs state this "is not the case here" [*Id.*]. At the hearing, while acknowledging that the March 5 Letter and the Email Strings contain legal advice, Plaintiffs argued that the attorney-client privilege is not applicable to either document.

With respect to the March 5 Letter, Parton, who was Defendant's former employee, sent a letter to Becky Beeler, who was Defendant's employee at the time, explaining what the legal department advised about the accounts. The Email Strings contain the same subject matter, i.e., discussion of advice from the legal department about the accounts. As explained in *Sid Mike 99, L.L.C. v. Suntrust Bank*, if the "corporate employee is sufficiently aware that he is seeking legal advice on behalf of the corporation, and within the scope of his corporate duties, the attorney-client privilege applies." No. 2:07-CV-02453-STADKV, 2009 WL 3255209, at *2 (W.D. Tenn. Oct. 6, 2009) (citation omitted); *aff'd in part sub nom. Sid Mike 99, LLC v. Suntrust Bank, Inc.*, No. 07-2453-STA-DKV, 2010 WL 11493194 (W.D. Tenn. Jan. 14, 2010); *see also Ajose v. Interline Brands, Inc.*, No. 3:14-CV-1707, 2016 WL 6893866, at *8 (M.D. Tenn. Nov. 23, 2016) (applying federal common law and noting that "the attorney-client privilege may extend to communications between employees that convey legal advice given by an attorney to the corporation"). The Court finds that the two paragraphs in the March 5 Letter and the few lines in the Email Strings are protected by the attorney-client privilege.

7

**B. Waiver**

"A federal court applies state law principles to questions involving privilege issues in diversity cases, such as the present one, and federal law principles govern waiver." *Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378, 385 (E.D. Mich. 2020) (collecting cases). Rule 502(b) governs whether a party has waived the attorney-client privilege by an inadvertent disclosure. Specifically, Rule 502 provides as follows:

> **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> **(1)** the disclosure is inadvertent;
>
> **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). Both parties also cite to the factors utilized in *Fed. Deposit Ins. Corp. v. Ernst & Whinney*, 137 F.R.D. 14, 17 (E.D. Tenn. 1991) ("*Ernst*") as follows:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;
>
> (2) the number of inadvertent disclosures;
>
> (3) the extent of disclosure;
>
> (4) any delay and measures taken to rectify the disclosures; [and]
>
> (5) whether the overriding interest of justice would or would not be served by relieving a party of its error.

While the Court need not consider every factor, the above factors serve as a useful guide "when appropriate under the particular circumstances of each case." *N. Am. Rescue Prod., Inc. v.*

8

*Bound Tree Med., LLC*, No. 2:08-CV-101, 2010 WL 1873291, at *9 (S.D. Ohio May 10, 2010). Finally, the party who is claiming non-waiver has the burden to establish the factors outlined above. *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.,* No. 5:12-CV-289-KSF-REW, 2013 WL 7800409, at *5 (E.D. Ky. Dec. 10, 2013).

The Court notes the unique circumstances of this case and how these issues were brought before the Court. As explained above, on December 29, 2021, the Court granted Plaintiffs' motion to compel and ordered Defendant to respond to Plaintiffs' discovery requests within thirty days [Doc. 95]. As part of Defendant's production, it produced the March 5 Letter. According to Plaintiffs, "Defendant heavily redacted nine of the eighteen pages of attachments that [Ms. Parton] enclosed with her letter" [Doc. 167 p. 3]. On October 3, 2022, Plaintiffs sent Defendant a good-faith letter concerning several discovery issues [Doc. 167-2]. Plaintiffs noted that Defendant redacted several pages of Parton's attachments to the March 5 Letter, but Defendant did not mention the redactions in the privilege log [*Id.*]. Defendant reviewed its document production on October 25, 2022, and in a letter dated November 2, 2022, Defendant stated that it inadvertently produced the March 5 Letter, explaining that "[p]ortions of this document purport to summarize legal advice by [Defendant's] in-house legal counsel related to the MMIA Agreements that are the subject of this lawsuit and the accounts of the putative class members" [Doc. 167-3]. The above events prompted Plaintiffs' motion [Doc. 167].

In briefing whether Defendant waived the attorney-client privilege with respect to the March 5 Letter, Plaintiffs relied on the Email Strings, asserting that Defendant disclosed favorable or beneficial information on the same subject and that Defendant was using the attorney-client privilege as a sword and shield. Defendant cited the Email Strings in its brief to argue otherwise. On February 14, 2023, Defendant sent Plaintiffs a letter [Doc. 165-1 pp. 2–4] clawing back the

9

Email Strings. For grounds, Defendant states that its counsel "previously determined that the Email Strings were not privileged, relying on case law holding that the fact of a lawyer's representation of a client is not privileged" [Doc. 165 p. 2 (citation omitted)]. Defendant states, however, "continued analysis of both the Email Strings and governing law concludes that those documents go further than the fact of legal consultation in that they reference legal advice or conclusions" [*Id.*].

After considering the circumstances, Rule 502, and the factors outlined in *Ernst*, the Court finds that Defendant has waived the attorney-client privilege with respect to the Email Strings. Given that the Email Strings contain the same subject matter as the March 5 Letter, the Court finds that Defendant also waived the attorney-client privilege with respect to the March 5 Letter. The Court analyzes the *Ernst* factors as follows:

1. **Inadvertent Disclosure**

With respect to the Email Strings, Defendant asserts that its claw back will also resolve the fairness concerns expressed in Plaintiffs' motion.[6] Defendant states that it "never intended to disclose privileged material" and that the "Email Strings were inadvertently produced in unredacted form based on the prior determination in good faith that the privilege did not apply" [Doc. 165 p. 4]. Citing to the factors disclosed in *Ernst*, Defendant asserts that they "weigh strongly in favor of a finding that there has been no waiver" [Doc. 165 p. 4].

Plaintiffs insist that Defendant has waived any privilege with respect to the Email Strings. In support of their position, Plaintiffs rely on the statements Defendant made in its brief regarding

---

[6] As noted above, Plaintiffs argued that Defendant had produced some documents regarding the same subject matter as the March 5 Letter, and therefore, Defendant waived any claim of attorney-client privilege with respect to the March 5 Letter. Plaintiffs argued that by releasing the Email Strings, Defendant was using the privilege as both a sword and shield.

10

the March 5 Letter [Doc. 175 p. 2 ("Plaintiffs misrepresent the contents of these documents.")]. Plaintiffs deny that Defendant inadvertently produced the Emails Strings, stating that such production occurred after a careful, four-step review process, and the Email Strings were filed in CM/ECF where they remained for approximately two months.

The parties appear to dispute the definition of "inadvertent" in Rule 502(b). The Court construes "inadvertent" to mean "mistaken, or unintentional, production of privileged material." *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, No. 5:12-CV-289-KSF-REW, 2013 WL 7800409, at *2 (E.D. Ky. Dec. 10, 2013) (citing *Coburn Group, LLC v. Whitecap Advisors LLC,* 640 F.Supp.2d 1032, 1038 (N.D.Ill.2009)); *see also Irth Sols., LLC v. Windstream Commc'ns LLC*, No. 2:16-CV-219, 2017 WL 3276021, at *8 (S.D. Ohio Aug. 2, 2017) ("Courts across the country have held that any action that was not intended, not planned, or a mistake, qualifies as "inadvertent"—regardless of how negligent a party's actions were."); *objections overruled*, No. 2:16-CV-219, 2018 WL 575911 (S.D. Ohio Jan. 26, 2018).

In reviewing what transpired here, Defendant voluntarily produced the Email Strings to Plaintiff as part of discovery and later argued that the material in the Email Strings was different than the March 5 Letter. Defendant argues that it was inadvertent because it first determined that the attorney-client privilege did not apply to the Email Strings, but after additional analysis, determined that it did apply. Although Defendant did not originally appreciate the application of the privilege to the Email Strings, this does not mean the disclosure was "inadvertent" in the context of Rule 502(b), and Defendant has not cited any authority to construe "inadvertent" in this manner. *United States v. Skeddle*, 989 F. Supp. 905, 908 (N.D. Ohio 1997) ("Voluntary disclosure of privileged communications is inconsistent with an assertion of the attorney client privilege."); *GATX Corp. v. Appalachian Fuels, LLC*, No. CIV.A. 09-41-DLB, 2010 WL 5067688, at *5 (E.D.

11

Ky. Dec. 7, 2010) ("Therefore, by voluntarily disclosing a privileged communication to the opposing party, the holder of the privilege waives it.").[7]

The parties also dispute whether Defendant inadvertently disclosed the March 5 Letter. Plaintiffs state, "With every document, including the document in question, being reviewed by counsel specifically for purpose of determining any claim of privilege, there should be no doubt that this was an intentional disclosure" [Doc. 169 p. 3]. Claiming that the March 5 Letter did not go unnoticed, Plaintiffs assert that "18 pages of attachments that [Parton] enclosed with her letter were heavily redacted, with several whole pages being redacted and portions of other pages being redacted" [*Id.*]. Plaintiffs state that Defendant claimed the attorney-client privilege more than 100 times and that given the change of defense counsel, it shows that Defendant employed a different strategy [*Id*]. Defendant denies that it employed a different strategy and states that Attorney Diegel "has been involved throughout the process" [Doc. 171 p. 6].

The Court does not find Plaintiffs' statements to be indicative that Defendant intentionally produced the March 5 Letter. The Court agrees that the redactions show that Defendant reviewed the document, but failing to redact other portions does not necessarily mean Defendant's actions, or lack thereof, were intentional. While the Court questions why two attorneys missed redacting similar legal advice from the Email Strings *and* the March 5 Letter, there is not sufficient evidence before the Court to find that the disclosure of the March 5 Letter was intentional.

---

[7] It is unclear if the Court needs to go farther in its analysis under Rule 502(b) given that the undersigned finds that Defendant's disclosure of the Email Strings was not inadvertent. *United States ex rel. Seabury v. Cookeville Reg'l Med. Ctr. Auth.*, No. 2:15-CV-00065, 2021 WL 3883968, at *2 (M.D. Tenn. Aug. 31, 2021) (explaining the difference between an intentional disclosure under Rule 502(a) and an inadvertent disclosure under Rule 502(b)). Given that the parties argue the factors in their opening and supplemental briefs, the Court will follow suit.

12

### 2. Precautions

The next factor is whether the holder of the privilege took steps or precautions to prevent the disclosure. "As with any standard measured by what is 'reasonable," the Court must employ a case-specific and flexible assessment of the holder's conduct." *First Tech. Cap., Inc.*, 2013 WL 7800409, at *3. Defendant states that it used a four-step process to review for privilege information wherein two attorneys reviewed the documents two times. While this four-step review process appears reasonable, in considering the circumstances of what happened, it is unclear if the attorneys adequately employed the four-step review process. Two attorneys originally determined that the Email Strings were not protected by the attorney-client privilege. After producing the March 5 Letter, defense counsel determined that the March 5 Letter should not have been disclosed, but at the same time, argued that the content in the Email Strings was different. Thus, while the four-step review process appears reasonable with respect to the March 5 Letter, the Court cannot find the same with respect to the Email Strings.

### 3. Prompt Action

This factor considers whether the producing party took prompt remedial action to withdraw the disclosures and prevent further inquiries and discovery about them. *Ernst*, 137 F.R.D. at 17. With respect to the Email Strings, Defendant did not promptly take reasonable steps to rectify the error. Plaintiffs filed the Email Strings as part of the public record in this case, the parties discussed the content of the Email Strings via briefing, and those briefs remained in the public record for approximately two months. *Cf. Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010) ("[W]hen a privileged document is used at a deposition, and the privilege holder fails to object immediately, courts have found the privilege to be waived." (citing *Nguyen v. Excel Corp.,* 197 F.3d 200, 206

13

(5th Cir. 1999)); *see also Clarke v. J.P. Morgan Chase & Co.,* No. 08–CV–02400, 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (holding two-month delay in asserting privilege, including failure to assert privilege at a deposition, weighed in favor of finding waiver and describing cases in which waiver was found after delay ranging from six days to one month).

With respect to the March 5 Letter, the Court finds Defendant did take prompt action given that it received Plaintiffs' letter on October 3, 2022, prompting it to review its document production on October 25, 2022, and sending the clawback letter on November 2, 2022. *Ernst*, 137 F.R.D. at 17–18 ("Although these documents may have been produced several months, or an even longer period, prior to the FDIC's assertion of a privilege regarding them, it does appear that as soon as the FDIC learned of the production, it acted promptly to retrieve these documents and to prevent further questions and discovery regarding them.").

### 4. Number of Disclosures

The Court has also considered the number of inadvertent disclosures. "[W]hen the production is large and the number of inadvertent disclosures is small, such facts militate against a finding of waiver." *Merenda v. Detroit Med. Ctr.*, No. CIV.A.06-15601, 2009 WL 454670, at *5 (E.D. Mich. Feb. 24, 2009) (citation omitted), *objections overruled sub nom. Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 WL 3905936 (E.D. Mich. Sept. 30, 2010). As several courts have explained, "While there does not appear to be a magic number or ratio of inadvertent disclosures to overall size of production, courts suggest that the number of disclosures must be substantial[ to weigh in favor of waiver]." *Nilavar v. Mercy Health Sys.-W. Ohio*, No. 399CV612, 2004 WL 5345311, at *5 (S.D. Ohio Mar. 22, 2004) (citation omitted)). Here, Defendant produced documents on November 23, 2021, and on January 28, 2022 [Doc. 171 p. 24].[8] The former

---

[8] The Court notes that Defendant produced the March 5 Letter as part of its January 28

14

production consisted of 4,843 pages, and the latter consisted of 7,951 pages [*Id*.]. Over the course of written discovery, defense counsel reviewed a little over 14,000 pages [*Id*.]. Considering the overall size of Defendant's document production, it does not appear to be too significant. *See Ernst*, 137 F.R.D. 14, 17 (finding no waiver when 22 privileged documents disclosed among the 2.3 million pages); *Merenda v. Detroit Med. Ctr.*, No. CIV.A.06-15601, 2009 WL 454670, at *5 (E.D. Mich. Feb. 24, 2009), (concluding that the inadvertent production of two pages out of 3.7 million pages reviewed, and 1.4 million pages produced), *objections overruled sub nom. Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 WL 3905936 (E.D. Mich. Sept. 30, 2010); *In re Grand Jury Investigation,* 142 F.R.D. at 280–81 (finding that eighteen disclosed documents out of 22,000 pages of discovery was insufficient to weigh in favor of waiver.). But given that the legal advice contained in the Email Strings consisted of approximately a few lines and the legal advice contained in the March 5 Letter is approximately two paragraphs, the Court finds this factor weighs in favor of Defendant. *Nilavar*, 2004 WL 5345311, at *5 (finding that the defendant's production did not constitute waiver, explaining that while the production was "relatively small[,]" the defendant only disclosed a "little more than a page of hand-written material").

5. **Extent of Disclosures**

Another factor looks to the extent of the disclosure which means, "how integrated the disputed documents have become in the litigation–e.g., whether the parties, the court or others involved in the litigation have relied on them." *Id.* (citation omitted). Defendant states that this factor weighs in its favor because "no party has sought to rely on the portions of the Email Strings that [it has clawed] back" [Doc. 165 p. 5]. Plaintiffs respond that the Email Strings are relevant to

---

production [Doc. 171 p. 25]. At the hearing, Plaintiffs stated that Defendant produced the Email Strings on January 28, 2022.

15

the key issues in this case—that is, "whether [Defendant] intentionally breached the Plaintiffs' contracts" [Doc. 175 p. 4]. In addition, Plaintiffs state that Defendant intentionally disclosed the Email Strings by filing them in CM/ECF and "letting it sit there for two months" [*Id.*]. Plaintiffs add that both parties relied on the Email Strings when analyzing whether Defendant had waived the attorney-client privilege with respect to the March 5 Letter.

The Court finds this factor slightly weighs in Plaintiffs' favor with respect to the Email Strings. Although Plaintiffs have not appeared to use the Email Strings in depositions or for other discovery purposes, there is no dispute that both parties have cited to the Email Strings to support their respective positions regarding whether waiver occurred with respect to the March 5 Letter. Further, the subject matter discussed in the Email Strings and the March 5 Letter is relevant to Plaintiffs' claims. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, at *4 (S.D. Ohio Aug. 28, 2012) (finding that the magnitude of the disclosure weighed in favor of waiver in part because the documents appeared to be relevant to the plaintiff's claims). On the other hand, while the March 5 Letter is relevant to the claims in this case, it does not appear that it has become integral to this litigation at this time.

### 6. Overriding Interests

Finally, the Court has reviewed the overriding interests of justice and finds that this factor weighs in Plaintiffs' favor. In analyzing this factor, the Court finds how this matter was brought before the Court important. As explained above, Defendant produced these documents to Plaintiffs without any claim of privilege. In December 2022, Plaintiffs filed their original motion requesting that the Court deem the privilege waived as to the March 5 Letter, relying in part on the Email Strings. Defendant argued the content of the Email Strings was different than the content of the March 5 Letter. On February 14, 2023, Defendant sent Plaintiffs a clawback letter, stating, "having

16

further reviewed the documents and analyzed the applicable law, we agree with your assertion that there are documents cited in your [m]otion that reflect legal advice given by [Defendant's] attorneys." [Doc. 165 p. 2]. Under the circumstances, the Court finds that the overriding interest of justice is not served if Defendant is relieved of its error. *Bobbitt v. Acad. of Ct. Reporting, Inc.*, No. 07-10742, 2008 WL 4056323, at *10 (E.D. Mich. Aug. 26, 2008) ("Justice would not appear to be served by sweeping under the rug highly probative documents that were out in the open for so long without vigorous objection.").

In summary, the Court finds that Defendant did not inadvertently disclose the Email Strings and has waived any attorney-client privilege with respect to these documents. While it appears that Defendant has met the requirements under Rule 502(b) with respect to the March 5 Letter, the Court finds that any attorney-client privileged has been waived for the reasons set forth below.

### C. Subject Matter Waiver

The Court finds that the attorney-client privilege is waived with respect to the March 5 Letter given that Defendant intentionally disclosed the Email Strings, which discusses the same subject matter. Numerous cases have explained, "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378, 386 (E.D. Mich. 2020) (quoting *Fort James v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citation omitted)). "This rule seeks to avoid the unfairness that might result from selective disclosure while, at the same time, upholding the privilege and preserving the interests it protects from excessive exposure." *United States v. Skeddle*, 989 F. Supp. 905, 908 (N.D. Ohio 1997). In determining the scope of any alleged waiver, courts are "guided by fairness concerns." *In re Grand Jury Proceedings*, Oct. 12, 1995, 78 F.3d at 256. "[R]ealizing that fairness is at the heart of the

17

waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly." *Skeddle*, 989 F. Supp. 909 (citing cases).

Keeping in mind the doctrine of fairness and that the waiver is only to information about the "same subject matter," the Court finds that Defendant's intentional disclosure of the Email Strings waives the attorney-client privilege with respect to the two paragraphs in the March 5 Letter. The Court has reviewed these documents, and they discuss the same subject matter. Defendant argues that the claw back of the Email Strings "resolves the fairness concern expressed in Plaintiffs' Motion" [Doc. 165 p. 3]. However, the Court observes that clawing back the evidence of the Email Strings Plaintiffs used to support their argument that Defendant waived the privilege with respect to the March 5 Letter seems equally unfair, especially given that Defendant took inconsistent positions on whether they were even privileged. Further, allowing Defendant to claw back the Email Strings that it intentionally disclosed is contrary to Rule 502(b). Given the circumstances of this dispute, the Court finds that fairness dictates a finding that Defendant has waived the privilege with respect to the Email Strings and the March 5 Letter.

### III. CONCLUSION

For the reasons explained below, the Court **GRANTS** Plaintiffs' Motion to Determine Claim of Privilege [**Doc. 167**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge