UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GEOFFREY WOLPERT, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:19-CV-138-TRM-DCP |
| BRANCH BANKING TRUST & COMPANY, | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Determine Claim of Privilege [Doc. 222]. Defendant responded in opposition to the motion [Doc. 224], and Plaintiffs filed a reply [Doc. 237]. The parties appeared for a motion hearing on October 23, 2023, via video conference. Attorneys Donald Vowell and Williams Hickerson appeared on behalf of Plaintiffs. Attorneys Zachary McEntyre, Taylor Williams, and Allexia Arnold appeared on behalf of Defendant.[1] For the reasons stated below, the Court **DENIES** Plaintiffs' motion [**Doc. 222**].

I.   FACTUAL BACKGROUND

The parties' filings relate to the Court's Memorandum and Order [Doc. 188] entered on March 30, 2023 ("March 30 Order") and the Court's Memorandum and Order [Doc. 218] entered on August 3, 3023 ("August 3 Order"). As detailed in the March 30 Order, the original dispute

---

[1] Defendant's in-house counsel, Robyn English-Mezzino, was also present for the motion hearing.

related to Defendant's claim that certain documents were protected pursuant to the attorney-client privilege. First, Defendant claimed that a letter dated March 5, 2018 ("March 5 Letter") [Doc. 138-1][2] was protected by the attorney-client privilege and inadvertently produced to Plaintiffs [Doc. 188 p. 3]. In support of its argument that Defendant had waived the privilege, Plaintiffs filed several emails [Doc. 135-4 pp. 2–5 and 42][3] to argue that "Defendant disclosed favorable or beneficial information on the same subject and that Defendant was using the attorney-client privilege as a sword and shield" [Doc. 188 p. 9]. Defendant also relied on the Email Strings to argue otherwise [*Id.*]. Later, Defendant claimed that the Email Strings were also protected by the attorney-client privilege and that it inadvertently disclosed them, too [*Id.* at 9–10].

While the Court found that Defendant inadvertently disclosed the March 5 Letter, the undersigned found that Defendant did not inadvertently disclose the Email Strings [*Id.* at 17]. Given that the March 5 Letter contained the same subject matter as the Email Strings, the Court found waiver of the attorney-client privilege with respect to these documents [*Id.* at 17–18].

On June 7, 2023, Plaintiffs filed a motion to compel requesting that the Court order Defendant to produce "discussion of advice from the legal department about the [subject] accounts" [Doc. 203 p. 2]. Plaintiffs argued that Defendant included documents in its privilege

---

[2] The March 5 Letter was from Ronda Parton, a former bank employee who held a Money Market Investment Account ("MMIA"), to Becky Beeler, who was Defendant's employee at that time [Doc. 138-1]. The Court originally placed the March 5 Letter under seal given the nature of the dispute [Doc. 152]. The Court later unsealed the March 5 Letter [Doc. 216].

[3] Plaintiffs originally filed the Email Strings [Doc. 135-4] in the public record, but later, the Court placed these records under seal pending a determination of whether Defendant waived the attorney-client privilege as to these documents [*See* Doc. 166]. The Bates Nos. of the email strings are as follows: BBT-011219-011220, BBT-011249-011250, and BBT-012049 [*See* Doc. 164 p. 2]. The parties and the Court referred to these emails as the "Email Strings." At the hearing on February 23, 2023, the parties clarified that at issue was a few lines in the Email Strings in [Doc. 135-4 pp. 2 and 42 (Bates Nos. BBT-011219 and BBT-12049) [*See* Doc. 181 pp. 106–07].

2

log that relate to legal advice regarding the Subject Accounts, which should not be protected given the Court's March 30 Order [*Id*. at 4]. Plaintiffs stated, "[T]he 100+ documents in question have all been redacted . . . to conceal legal advice or discussion of advice from the legal department about the accounts" [*Id*. at 5 (footnote omitted)]. While they were "prepared to submit the documents [for an *in-camera* review]," Plaintiffs did not believe that the Court needed to conduct an *in-camera* review given that the "privilege log is sufficient" [*Id*. at 6]. Defendant responded that Plaintiffs' motion sought to "expand the scope of the Court's [March] Order far beyond its plain language" [Doc. 207 p. 1]. Arguing that the Court "limited its holding of a privilege waiver to three specific documents[,]" Defendant stated that "Plaintiffs now move to impermissibly compel 112 documents on [its] privilege log, proffering an interpretation of the Court's order that would have broader implications for additional documents identified as responsive and privileged in future productions, to deposition testimony, and to privileged communications with experts" [*Id*.]. Defendant argued that "Plaintiffs' statement that the Court need not review the documents in camera because the privilege log descriptions are sufficient to identify the documents in the scope of the Court's Order . . . proves the point" [*Id*. at 3 (internal citation omitted)]. Defendant submitted that the "denial of Plaintiffs' motion and clarification of the Court's prior order is necessary to avoid imminent and irreparable harm from the forced disclosure of attorney work product and attorney-client privileged communications" [*Id*. at 4].

Defendant also filed a competing motion requesting that the Court clarify its March 30 Order "[i]n light of Plaintiffs' interpretation" thereof [Doc. 204 p. 11]. Defendant argued that the March 30 Order did not:

> (1) discuss how [its] production of the Email Strings to comply with its discovery obligations in this matter is one of those

3

> rare instances that requires production of the 112 documents identified on [its] privilege log (and potentially other documents determined to be privileged in future document productions) to prevent a selective, misleading and affirmative presentation of evidence;
>
> (2) mention how the 112 documents relate to the same subject matter as the Email Strings; or,
>
> (3) describe how the disclosure of the Email Strings was an "intentional" waiver within the meaning of FRE 502(a)(1).

[*Id*. at 3].

The Court clarified the scope of the March 30 Order in its August 3 Order [Doc. 218]. The Court stated follows:

> Arguing that "the Court unmistakably defines the subject matter" [Doc. 211 p. 2], Plaintiffs primarily rest their argument on the following sentence in the March 30 Order: "The Emails strings contain the same subject matter, i.e., discussion of advice from the legal department about the accounts" [Doc. 188 p. 7]. But Plaintiffs do not appreciate that at the time of the March 30 Order, the March 5 Letter and the Email Strings were under seal [*See* Docs. 152 and 166]. The Court did not define the subject matter as "discussion of advice from the legal department about the accounts" [Doc. 118 p. 7]. Instead, the Court was simply maintaining the confidentiality of matters filed under seal pending the outcome of the parties' dispute, including any appeals. Plaintiffs' interpretation is beyond the scope of the March 30 Order and would result in an extraordinary broad waiver, which is contrary to the principal that waiver of the "'same subject matter' is to be viewed narrowly." *United States v. Skeddle*, 989 F. Supp. 905, 909, n.2 (N.D. Ohio 1997) (citations omitted). The Court therefore finds Plaintiffs' request that the Court compel Defendant to "produce all documents that it has withheld or redacted that contain the same subject matter as the [March 5 Letter] and the Email Strings, 'i.e.[,] discussion of advice from the legal department about the subject accounts'" [Doc. 211 p. 8 (citation omitted)] not well taken.
>
> The Court agrees with Defendant's position that the March 30 Order "was limited to the specific documents at issue[.]" [Doc. 204 p. 9 (emphasis omitted)]. Specifically, the March 30 Order adjudicated

4

the parties' disputes regarding (1) whether the March 5 Letter and Emails Strings were protected by the attorney-client privilege, and if so, (2) whether Defendant waived the privilege with respect to those documents. "[I]t would be inappropriate for this Court to prospectively" find that Defendant waived the privileged (should it even exist) with respect to other documents that the Court has not reviewed nor have the parties sufficiently briefed, as such would be an impermissible advisory opinion. *Doe v. Rausch*, 461 F. Supp. 3d 747, 778 (E.D. Tenn. 2020); *see also United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."). Indeed, in the March 30 Order, the undersigned concluded, "The Court has reviewed these documents, and they discuss the same subject matter" [Doc. 188 p. 18]. The Court declines to address Defendant's arguments regarding Rule 502(a) as they appear to be an attempt to re-litigate and/or raise new arguments with respect to the original issues.

[*Id*. at 8–9].

## II. PROCEDURAL HISTORY

On August 11, 2023, Defendant served Plaintiffs with a revised privilege log ("Fifth Privilege Log") [Doc. 222 p. 6; Doc. 222-1]. According to Plaintiffs, the Fifth Privilege Log contains approximately 142 entries[4] that assert the attorney-client privilege and uses a similar description as it did when describing the March 5 Letter and the Email Strings [Doc. 222 p. 8].[5] On August 31, 2023, Plaintiffs filed the instant motion requesting that the Court find that Defendant waived the attorney-client privilege with respect to the documents containing the

---

[4] As Plaintiffs note, although there are approximately 142 documents, some appear duplicative [Doc. 222 p. 9 n.7] or as Defendant states "similar versions or offshoots" [Doc. 224 p. 4 n. 2; *see also* Doc. 222-2].

[5] Defendant's description is generally as follows: "Communication between in-house counsel and client regarding legal advice related to a customer account [or Subject Accounts]" [Doc. 222-1]. Plaintiffs refer to this entry as the "Privilege Description," and the Court will follow suit.

Privilege Description [Doc. 222]. In the alternative, "Plaintiffs request the Court to conduct an *in-camera* inspection of each document to determine whether the subject matter of each is in fact, as the Privilege Description indicates, the same as the Email Strings and the Ronda Parton letter" [*Id.*].[6] Among other issues,[7] Plaintiffs state that the Fifth Privilege Log contains "forty-one (41) new/additional entries wherein it asserts that previously undisclosed/unproduced documents are also privileged" [*Id.* at 7].[8] "While Plaintiffs do not believe an *in-camera* review of the approximately 142 documents at issue is necessary on the grounds that the descriptions in

---

[6] In support of their request, Plaintiffs have filed the redacted documents that Defendant produced and claim privileged [*See* Doc. 222-2].

[7] Plaintiffs state that the Fifth Privilege Log contains the Email Strings and duplicates thereof [Doc. 222 pp. 6–7]. In addition, Plaintiffs state that the Fifth Privilege Log "re-ordered the same entries as found in [Defendant's] fourth privilege log to appear in ascending Bates order, whereas the previous privilege logs were presented with several separate runs of Bates order" [*Id.* at 6]. Defendant responds that while Plaintiffs claim that the Fifth Privilege Log contains the Emails Strings and duplicates, it "produced the unredacted versions of all of these documents in January 2022" [Doc. 224 p. 4 (emphasis omitted)]. Defendant states that motion practice on this issue was unnecessary had Plaintiffs raised "this administrative question" with Defendant [*Id.* at 5]. Nevertheless, Defendant produced a revised privilege log removing the entries of the Email Strings and near duplicates [*Id.* at 5 n. 4]. The Court therefore finds that this issue is moot. With respect to Plaintiffs' argument that the entries in the Fifth Privilege Log are in ascending Bates order, which is different than previous logs, Defendant states that Plaintiffs have not explained why this is objectionable. The Court agrees with Defendant's position but encourages the parties to discuss this issue as Defendant has suggested [*Id.* ("However, if Plaintiffs prefer some other order, they can simply ask [Defendant] to revert or to accommodate their preference[.]"].

[8] In a footnote, Plaintiffs argue that Defendant's production was untimely because the Court had ordered the production of documents on or before January 28, 2022, and therefore, the Court should find that Defendant waived the attorney-client as to the documents Defendant untimely produced [Doc. 222 p. 7 n. 6]. Defendant states that it is supplementing its discovery responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure and making rolling productions. Plaintiffs did not address Defendant's response in their reply [*See* Doc. 237]. The Court does not have sufficient information on this issue raised in a footnote, and therefore, the undersigned declines to address it.

Defendant's privilege log is sufficient . . . to determine the applicable claim of privilege," they "make this request following the Court's [August 3 Order]" [*Id*. at 15–16].

Defendant responds that Plaintiffs are attempting to re-litigate matters that the Court has already addressed [Doc. 224].[9] Citing to the March 30 and August 3 Orders, Defendant argues that the Court was clear that the waiver only extended to the documents at issue. When reviewing the communications [*see* Doc. 222-2] along with the descriptions in the Fifth Privilege Log [*see* Doc. 222-1], Defendant states that "[t]he basis for the privilege redactions . . . is evident" [Doc. 224 p. 6]. Defendant claims that Plaintiffs' request is a fishing expedition, and they are not entitled to an *in-camera* review. Defendant seeks its attorneys' fees incurred in responding to Plaintiffs' motion.

Following the parties' filing of the joint status report [Doc. 227], Plaintiffs filed a reply noting that the parties' "impasse . . . hinges on two things: (1) the scope of the subject matter waiver and (2) the definition of the subject matter of the Email Strings and the March 5 Ronda Parton letter [Doc. 237 p. 2]. Plaintiffs state that they were originally of the opinion that the Court defined the subject matter in the Email Strings as "discussion of advice from the legal department about the accounts[]" [*Id*. at 3], but the Court disagreed with that definition in the August 3 Order. Plaintiffs state, however, that "[i]n making its ruling . . . the Court did not thereafter provide a specific definition" [*Id*.]. In reviewing the August 3 Order, Plaintiffs believe that the Court determined "not to prospectively find that Defendant waived the attorney-client privilege as to

---

[9] Defendant also contends that Plaintiffs did not participate in a good faith meet and confer [Doc. 224 p. 2]. Following the filing of Defendant's response, the Court ordered the parties to engage in a good faith meet and confer over the issues that Plaintiffs raise in their motion [Doc. 225]. On September 25, 2023, the parties represented to the Court that they participated in a meet and confer but reached an impasse [Doc. 227].

7

documents it had not yet reviewed or regarding which the parties had not sufficiently briefed as an invitation to put the additional documents at issue through a separate filing" [*Id*. at 4]. Plaintiffs state that their motion is this separate filing. While Defendant claims that Plaintiffs are on a fishing expedition, Plaintiffs state that they "can only go off of the information provided, and based on such instances and upon [Defendant's] own privilege descriptions, it appears—at least prima facie—that all documents at issue in Plaintiffs' [m]otion contain the same subject matter as the Email Strings and/or the March 5 Letter from Ronda Parton" [*Id*. at 5]. Even if the Court denies the motion, Plaintiffs state that an award of attorneys' fees is not warranted. In summary, Plaintiffs seek the specific following relief: "(1) define the subject matter of the Email Strings for the benefit of all parties, (2) determine that [Defendant] has waived the attorney-client privilege as to all communication relating to the subject matter found to have been waived in Doc. 188, (3) make an *in-camera* review of the documents in question should it find such necessary and, thereafter, (4) require [Defendant] to produce to Plaintiffs all such documents in unredacted form" [*Id*. at 6].

On October 23, 2023, the parties appeared before the undersigned by video conference for a motion hearing. Prior to the motion hearing, the Court requested that the parties submit additional briefing on whether Rule 502(a) of the Federal Rules of Evidence governs the present issue. The parties agreed in their supplemental briefing that Rule 502(a) governs, but they disagreed on whether the factors weigh in favor of disclosure. During the hearing, Plaintiffs stated that the subject matter of the Email Strings is whether Defendant was to honor the interest rate. Plaintiffs argued that the 142 documents described in the Fifth Privilege Log concern the same subject matter given that the descriptions are nearly identical to the descriptions of the Email Strings. Plaintiffs sought an in-camera review to determine if the subject matter of the Emails

8

Strings is the same as the withheld documents in the Fifth Privilege Log. Plaintiffs further argued that fairness dictates that Defendant produce these documents because they concern the same subject matter.

Defendant denied that the subject matter is the same. But regardless, Defendant stated that fairness dictates against disclosure. Defendant explained that it has not relied on the Email Strings to either prove its case or negate any of Plaintiffs' claims. Under Rule 502(a)(3), according to Defendant, disclosure is appropriate only when a party tries to rely on the attorney-client privilege as a sword and a shield, which is not what happened here.

### III. ANALYSIS

The Court has considered the parties' positions and the procedural history of this matter. The Court has already determined that Defendant waived the attorney-client privilege with respect to the Email Strings. Even so, the Court finds that Rule 502(a) does not warrant further disclosure under these circumstances. In light of this finding, the Court declines to conduct an *in-camera* review of the documents described in the Fifth Privilege Log.

As the parties acknowledged, Rule 502(a) is relevant to the Court's analysis, and it provides as follows:

> **(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and

>             **(3)** they ought in fairness to be considered together.

Fed. R. Evid. 502(a).  The party claiming attorney-client privilege has the burden to show that it has not waived the privilege.  *GATX Corp. v. Appalachian Fuels, LLC*, No. CIV.A. 09-41-DLB, 2010 WL 5067688, at *2 (E.D. Ky. Dec. 7, 2010).

As mentioned above, the Court has already determined that Defendant intentionally waived the attorney-client privilege with respect to the Email Strings [Doc. 188].  The Court therefore turns to whether the Email Strings are the same subject matter as the documents described in the Fifth Privilege Log.  Given that the descriptions in the Fifth Privilege Log are the same as the Email Strings, Plaintiffs contend that the subject matter must be the same.  In the alternative, they request an *in-camera* review of the documents so that the Court can determine whether the withheld documents contain the same subject matter as the Email Strings.  Defendant claims that sharing a description does not establish the same subject matter under Rule 502(a) and that the Fifth Privilege Log simply describes the documents in a way that would avoid revealing attorney-client privilege information.

The Court does not have sufficient information to determine if the Email Strings contain the same subject matter as the withheld documents described in the Fifth Privilege Log.  Under these circumstances, however, an *in-camera* review is not necessary because even if the withheld documents described in the Fifth Privilege Log contain the same subject matter as the Email Strings, the Courts finds fairness does not warrant disclosure.  *See* Fed. R. Evid. 502(a)(3); *see also AngleFix Tech, LLC v. Wright Med. Tech., Inc.*, No. CV 13-2407-JPM-TMP, 2017 WL 11681864, at *5 (W.D. Tenn. Mar. 6, 2017) (noting that the court does not have enough

information to determine the subject matter of the withheld documents, but regardless, fairness did not warrant production).

As mentioned above, Rule 502(a) states that intentional waivers extend to documents sharing the same subject matter when they "ought in fairness to be considered together." Fed. R. Evid. 502(a). "The Advisory Committee notes to the Rule make clear that the rule is intended to govern and limit the application of subject matter waiver for disclosures made in federal proceedings[.]" *Owners Ins. Co. v. Reynolds Concrete Pumping, LLC*, No. 321CV00356RGJCHL, 2023 WL 3166179, at *5 (W.D. Ky. Apr. 27, 2023) (citation omitted). As the Advisory Committee notes explain, "[A]subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note to 2007 amendments (citing *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D. D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage)). The Advisory Committee notes further explain:

> Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner. It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver. . . .
>
> The language concerning subject matter waiver--"ought in fairness" --is taken from Rule 106, because the animating principle is the same. Under both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation.

Fed. R. Evid. 502 advisory committee's note to 2007 amendments. In other words, "subject matter waiver exists only in cases where a party deliberately discloses privileged information in an attempt to gain a tactical advantage." *GATX Corp.*, 2010 WL 5067688, at *6.

The Court finds the analysis in *AngleFix Tech, LLC v. Wright Med. Tech. Inc.*, No. 13-2407-JPM-tmp, 2017 WL 11681864, at *1 (W.D. Tenn. March 6, 2017) persuasive. In *AngleFix Tech, LLC*, the court found that the plaintiff had waived the attorney-client privilege with respect to several documents, and the defendant moved to compel the production of other documents, arguing that the court's finding meant that the plaintiff had "effectively waived all privilege" with respect to the documents containing the same subject matter. *Id*. at *5. The court noted that the defendant's motion "touched upon an issue intended to be addressed by the enactment of Rule 502 of the Federal Rules of Evidence, with subdivision (a) governing subject matter waiver." *Id*. (footnote and citation omitted). And notably, "Rule 502 places the focus on intentional, seemingly deceptive, and unfair conduct, and the emphasis on fairness has long guided the Sixth Circuit in this area." *Id*. (citation omitted). Therefore, while the plaintiff "waived its privilege via its March 11 production over documents relating to settlement strategy, document production strategy, and one particular foreign patent application[,]" and other subject matter, the court declined to order the plaintiff to produce other documents with the same subject matter. *Id*. at *5–6. Relying on cases within the Sixth Circuit, the court reasoned that the defendant had not shown that the plaintiff "intentionally put itself at an unfair advantage by waiving privilege over these materials." *Id*. (citing *Lott v. Tradesmen Int'l, Inc.*, Civil Action No. 5:09-CV-183-KKC, 2013 WL 308853, at *2 (E.D. Ky. Jan. 25, 2013) (finding no subject matter waiver under Rule 502 when privilege was waived over certain attorney-client e-mails in circumstances such that the waiving party would

"gain no tactical advantage"); *GATX Corp.*, 2010 WL 5067688, at *6 (finding subject matter waiver inconsistent with the purpose of Rule 502(a) when privilege was waived over only a small subset of alleged privileged documents and there was no indication the waiving party intended to use the waived documents to prove its case).[10]

Here, Defendant has not relied on the Email Strings in a selective, misleading, or unfair matter, warranting disclosure of all other documents with the same subject matter. Defendant represented at the hearing that it has not relied on the Email Strings to prove its defense or to negate any of Plaintiffs' claims. *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 534 (S.D. N.Y. 2015) (finding that General Motors did not waive the attorney-client privilege or the work-product doctrine in part because it was not offensively using the material, "nor made a selective or misleading presentation that is unfair to adversaries in this litigation, or any other"); *cf. In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 529 (6th Cir. 2022) ("Paulus is not entitled to admit the selective information disclosed in the Shields Letter to paint an inaccurate

---

[10] The court also noted that "[t]he district courts in the Sixth Circuit that have come out differently and found a subject matter waiver have typically had particular fairness concerns based on the specific facts of those cases." *AngleFix Tech, LLC*, 2017 WL 11681864, at *5 (citing *Roa v. Tetrick*, No. 1:13-CV-379, 2014 WL 695961, at *4-5 (S.D. Ohio Feb. 24, 2014) ("Here, any photographic or audio information or materials taken in conjunction with the surveillance of plaintiffs and their family are similar to the video evidence already produced and should in fairness be disclosed to plaintiffs. Like video evidence, photographic or audio evidence is potentially subject to distortion or manipulation and may be misleading depending on the context in which it was produced or presented. In fairness, plaintiffs should be given the opportunity to examine these materials to prevent the potential for selective and misleading presentation of the evidence. However, defendants need not produce various paper records related to the surveillance." (citations omitted); *Lee v. Med. Protective Co.*, 858 F. Supp. 2d 803, 807–09 (E.D. Ky. 2012) (in a case where a party had its appellate counsel testify to privileged matters on its behalf, fairness considerations under Rule 502 required the party to produce communications from its trial counsel on the same subject matters).

13

picture of that evidence to the jury. Were that the case, this situation is precisely the one for which Rule 502(a) was designed[.]") *and Owners Ins. Co.*, 2023 WL 3166179, at *6 ("Of particular concern to the Court, it actually appears that Reynolds often redacted instances in which the testimony of [the witness] was not as favorable on the issue of his comparative negligence as some of the unredacted testimony. This leads the Court to conclude as to Fed. R. Evid. 502(a)(3) that in fairness, the redacted and unredacted portions of the [Examination Under Oath] should be considered together.").

Plaintiffs argue that fairness dictates that all other documents be disclosed because fairness requires that all documents having the same subject matter also be produced. But adopting this argument renders the third factor—fairness—irrelevant. Plaintiffs also argue that the Court previously determined it was fair to consider the Email Strings with the March 5 Letter. The Court found, however, that subject matter waiver was applicable given the unique circumstances of that disclosure. But this finding does not automatically extend to 142 other documents. And Plaintiff did not rebut Defendant's argument that it had not relied on the Email Strings in a selective or misleading way such that Plaintiffs need a more complete and accurate presentation. *See* Fed. R. Evid. 502(a) advisory committee's note to 2007 amendments. The Court therefore finds Plaintiffs' request not well taken.

As a final matter, Defendant seeks its attorneys' fees pursuant to Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure. Rule 37(a)(5)(B) allows the Court to award attorney's fees if a motion is denied unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Defendant argues that Plaintiffs' motion raised the same issues that were adjudicated in the Court's August 3 Order. In the August 3 Order,

the Court simply rejected Plaintiffs' definition of the subject matter of the Email Strings and agreed with Defendant's position that the March 30 Order was limited to the Email Strings and the March 5 Letter. The Court further noted it would be inappropriate to find waiver with respect to the other withheld documents given that the Court had not reviewed them, nor had the parties sufficiently briefed that issue. Plaintiffs' actions in filing a motion to put this specific issue before the Court was substantially justified, and the issues they raised in the motion were genuine disputes. *See Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) ("A motion is 'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). The Court therefore denies Defendant's request for its attorneys' fees.

## III. CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiffs' Motion to Determine Claim of Privilege [**Doc. 222**].

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge